# EXHIBIT A



THE LAW FIRM OF
**BELLWOAR KELLY LLP**

126 West Miner Street #1
West Chester, PA 19382
(610) 314-7066
www.bellwoarkelly.com

Andrew J. Bellwoar
Evan J. Kelly
Ryan R. Grace
Jonathan R. Long
Sheryl L. Brown

John J. Mahoney, *Of Counsel*
Paul J. Drucker, *Of Counsel*
Elizabeth Curtis Swain, *Of Counsel*

September 23, 2025

*Sent via email:  a@perronglaw.com*
Andrew R. Perrong, Esquire
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA  19038

       Re:    Shelton v. EMPWR Solar LLC
               E.D.Pa. 24-cv-06870

Dear Mr. Perrong:

On behalf of Defendant EMPWR Solar, LLC, attached please find Defendant EMPWR's Supplemental Objections and Responses to Plaintiff's Discovery along with referenced documents including:

- Lead Partnership Agreement (Millennial Planning Solutions)
- Lead List containing Plaintiffs' name (Redacted)
- Redaction Log
- EMPWR Solar Consultation Expectations (undated).

Very truly yours,

*/s/ Sheryl L. Brown*

Sheryl L. Brown, Esquire

Cc:    EMPWR Solar, LLC
        Andrew J. Bellwoar, Esquire

*Sheryl L. Brown, Esquire ◊ 610-314-7066 ◊ sbrown@bellwoarkelly.com*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

James E. Shelton                     :

    V                              :          Civil Action No. 24-6870-JMY

EMPWR Solar LLC                      :

---

## EMPWR SOLAR LLC'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY

EMPWR Solar LLC ("EMPWR") objects to the Definitions and Instructions to the discovery requests of the Plaintiff, to the extent they exceed or conflict with the Federal Rules. EMPWR further objects to the extent any of the requests calls for information protected by the attorney client privilege. Without waiver of these objections, EMPWR objects and responds as follows.

## INTERROGATORIES

1. **Response**: Robby Edge, Partner, EMPWR Solar LLC.

2. **Objection**. Interrogatory No. 2 is overly broad, and the term "campaign" is not defined.

   **Response**: Without waiving the aforestated objection, EMPWR was party to a contract with Treantly. Upon information and believe, the platform used is PODEO. By way of further response, upon information and belief, it is denied that calls were made through random or sequentially generated activity. Rather, Treantly employees communicated with a person who expressed an interest in solar power.

   **Supplemental Response**: **Without waiving the aforestated objection, EMPWR did not directly employ any individuals for telemarketing**

purposes at the time of contact with Plaintiff. It is further denied that any telemarketing calls were made on behalf of EMPWR to "generate leads". Based upon information and belief, leads would come from an online form, website or door-to-door knocks which would include an 'opt in' that the homeowner consented to contact for solar power. Regarding Treantly's contact with Plaintiff by Mecah Pojas, Launch Marketing/Millennial Planning Solutions provided leads from various sources believed to include door knocks and/or online opt-in information. Furthermore, based upon information Plaintiff received from Aloware's subpoena response, the phone number used to contact Plaintiff was owned and/or maintained by Primitive Power. EMPWR's contacts at Primitive Power were Jarom Wall and Devin Oakes. Primitive Power was a 1099 consultant with EMPWR. It is believed that Primitive Power no longer conducts business.

Plaintiff was contacted by Mecah Pojas, employed by Treantly. Treantly was responsible for payroll, benefits and taxes. In 2024, Treantly had two employees assigned to the EMPWR account: Mecah Pojas, and Rixielyn Ocheda, a virtual assistant. The Treantly employees received direction from Treantly, and Primitive Power.

Based upon information received, the Data set provided by Launch Marketing/Millennial Planning Solutions which included Plaintiff's information was based various forms of leads including door to door knocks. It is also believed the data was scrubbed for compliance with all laws.

3. **Objection**. Interrogatory No. 3 is vague and overly broad.

   **Response**: Without waiving the aforestated objection, see Response to No. 2 above.

4. **Response**: EMPWR is without knowledge or information sufficient to form a belief as to the request in Interrogatory No. 4. By way of further response, and upon information and belief, none.

2

**Supplemental Response**: **Other than consultants and vendors previously identified, none known.**

5. <u>Response</u>: None.  By way of further response, Mecah Pojas left a voicemail; and sent two text messages to Plaintiff.  Plaintiff requested Mecah to email him the details.  See, Screen Shot attached hereto and marked Exhibit "A".

**Supplemental Response**:  **No EMPWR employee communicated with Plaintiff.  Upon information and belief Launch Marketing/Millennial Planning Solutions provided leads from various forms, including online information and door-to-door knocks. Also, upon information and belief, Mecah Pojas contacted Plaintiff based upon information received from Launch Marketing/Millennial Planning Solutions.  As set forth on the previously produced contact sheet, Ms. Pojas texted Plaintiff after which Plaintiff requested more details by email.**

**Based upon information received from Launch Marketing/Millennial Planning Solutions, the individual who conducted the door-to-door knock was Brian Ficket, Jr.  EMWPR has no information with whom he was associated.**

6. <u>Response</u>.  See response to Interrogatory No. 5, above, and Exhibit A.  By way of further response, following Plaintiff's request for no calls, the contact was placed on their DNC.

**Supplemental Response**:  **Based upon information and belief, Launch Services/Millennial Planning Solutions obtained Plaintiff's contact information through a door-to-door knock.  By way of further response, it is believed that any contact included 'opt in' consent of the homeowner; and/or the information was scrubbed by Launch Services/Millennial Planning Solutions. As noted on the previously produced screen shot, Plaintiff asked that details be emailed to him, but no calls.**

7. <u>Response</u>: See, Response to Interrogatory No. 5, above.

**Supplemental Response**:  **see Response to Interrogatory Nos. 2, 5 and 6 above.**

3

8. **Objection**. Interrogatory No. 8 is overly broad and without limitation to time.

**Response**: Without waiving the aforestated objection, to the best of my recollection, Brennan, an employee of a prior vendor.

**Supplemental Response:** **Without waiving the aforestated objection, contact was made with Brennan McCloud, of Launch Marketing/Millennial Planning Solutions to advise of the litigation and to request documents referencing contact with Plaintiff.**

9. **Objection**: Interrogatory No. 9 seek information maintained by a third party.

**Response**:   Without waiving the aforestated objection, PODEO.  Also, see, Exhibit A.

**Supplemental Response:** **Without waiving the aforestated objection, based upon information and belief Primitive Power would have information regarding the PODEO platform. EMPWR does not have an account with PODEO.**

10. **Objection**: Interrogatory No. 10 is vague and overly broad.

**Response**: Without waiving the aforestated objection, see Exhibit A referencing Plaintiff's request to have details emailed to him at his email address and Mecah's response, along with reference that contact was sent to DNC.

**Supplemental Response:** **Based upon information and belief, any person on a lead list opted in and provided consent for contact and/or was scrubbed.  EMPWR Solar reserves the right to supplement this response based upon further information received during discovery.**

4

11. **Objection**. Interrogatory No. 11 is overly broad and is not limited in time or nature. Additionally, the Interrogatory requests information regarding a third party over whom EMPWR has no control.

**Response**: Without waiving the aforesaid objection, none known.

## DOCUMENT REQUESTS

1. **Objection**. Request No. 1 is a compound request, and subject to the attorney client work-product; and or attorney-client privilege.

   **Response**. Without waiving the aforestated objection, see Exhibit A.

   **Supplemental Response**: **Without waiving the aforestated objection, see attached redacted lead list page referencing Plaintiff. (Also, See Redaction Log)**

2. **Objection**: Request No. 2 seeks information subject to the attorney work product and/or attorney-client privilege.

   **Response**: Without waiving the aforestated objection, see Exhibit A.

   **Supplemental Response**: **Without waiving the aforestated objection, see attached redacted lead list page referencing Plaintiff. (Also, See Redaction Log).**

3. **Objection**. Request No. 3 is vague and overly broad. By way of further objection, the term "related to Plaintiff" and "relationship with Plaintiff" is undefined and vague.

   **Response**: Without waiving the aforestated objection, see Exhibit "A".

   **Supplemental Response**: **Without waiving the aforestated objection, see attached redacted lead list page referencing Plaintiff. (Also, See Redaction Log).**

4. **Response**: EMPWR, based upon its investigation to date, denies any calls to Plaintiff, other than Mecah's voicemail. See, Exhibit A.

5. **Response**: Based upon information and belief, EMPWR denies any vendor failure. EMPWR is not in possession of any standard operating procedures for Treantly or any other third-party vendors.

6. **Response**: Based upon information and belief, none. Investigation is continuing. By way of further response, EMPWR does not have control over any third-party vendors.

   **Supplemental Response**: **EMPWR is not in possession of any complaints.**

7. **Objection**: Request No. 7 is vague and overly broad and the terms "documents representing agreements" is not defined.

   **Response**: Without waiving the aforestated objection, see attached Client Outsourcing Master Agreement by and between EMPWR and Treantly, marked Exhibit "B".

   **Supplemental Response**: **Without waiving the aforestated objection, see Contract with Launch Marketing/Millennial Planning Solutions LLC.**

8. **Objection**: Request No. 8 is overly broad.

   **Response**: Without waiving the aforestated objection, see Exhibit A.

9. **Objection**: Request No. 9 seeks information from a third party over which EMPWR has no control.

   **Response**: Without waiving the aforestated objection, see Treantly Agreement attached.

   **Supplemental Response**: **Without waiving the aforestated objection, see Contract with Launch Marketing/Millennial Planning Solutions LLC.**

10. **Objection**. Request No. 10 is vague and overly broad.

   **Response**: Without waiving the aforestated objection, see Exhibit A.

11. **Response**.   Based upon information and belief, none. Investigation is continuing.

   **Objection:  Request No. 11 is overly broad and unduly burdensome.**

   **Supplemental Response:  Without waiving the aforestated objection, see attached redacted lead list page referencing Plaintiff.**

12. **Objection**. Request No. 12 is vague and overly broad.


   **Response**: Without waiving the aforestated objection, see Exhibit A.

13. **Response**. None.
   **Supplemental Response: In addition to Exhibit A, previously provided, see attached redacted lead list page referencing Plaintiff.**

14. **Response**:   EMPWR is without knowledge or information sufficient to respond to the Request.  The referenced telephone number is unknown.
   **Supplemental Response:   Based upon information received through Plaintiff's Subpoena to Aloware, Primitive Power owned/controlled the telephone number.**


15. **Response**:   EMPWR is without knowledge or information sufficient to respond to the Request.  The referenced telephone number is unknown.
   **Supplemental Response:   Based upon information received through Plaintiff's Subpoena to Aloware, Primitive Power owned/controlled the telephone number.**

16.    **Objection**: Request No. 16 is overly broad and vague.

17.    **Response**: None.

18.    **Response**: See Client Outsourcing Master Agreement attached and marked Exhibit B.

**Supplemental Response:  See Contract by and between EMPWR and Launch Marketing/Millennial Planning Solutions LLC.**

19.    **Objection:** Request No. 19 seeks information which requires a conclusion of law.  By way of further objection, EMPWR asserts it is not a telemarketing firm.

**Response**:    Without waiving the aforestated objection, investigation continues.

**Supplemental Response:  Without waiving the aforestated objection, EMPWR does not have a copy of a specific policy in effect at the time of contact with Plaintiff.  By way of further response, see a similar Policy attached.**

20.    **Objection**: Request No. 20 is overly broad and unduly burdensome and seeks information from their parties over which EMPWR lacks control. EMPWR further objects to the extent it is not a telemarketing firm.

**Response**: Without waiving the aforestated objection, see Exhibit A attached.

**Supplemental Response:  Without waiving the aforestated objection, any documents containing information regarding calls/contact made would be in the possession and/or control of Treantly or Primitive Power. By way of further response, see Screen Shot (previously produced) and lead list containing Plaintiff's name obtained through Primitive Power and Launch Marketing/Millennial Planning Solutions LLC.**

21.      **Objection:**  Request No. 21 is overly broad and unduly burdensome and the terms "concerning this litigation" are not defined.

## REQUESTS FOR ADMISSIONS

1. **Objection:** No class has not been certified pursuant to Rule 23 (c).  By way of further objection, Request No. 1 calls for a legal conclusion on an ultimate issue of the case. See, *Gharzerian v. The United States of America,* 1991 WL 30764 (E.D. Pa. March 5, 1991); *McCarthy v. Darman,* 2008 WL 24688694 (E.D. Pa. June 16, 2008).

   **Response:** Without waiving the aforestated objection, denied.  EMPWR did not directly contact Plaintiff.

2. **Objection:** No class has been certified pursuant to Rule 23 (c).  By way of further objection, the term business relationship is not defined.

3. **Denied.**  EMPWR did not directly contact Plaintiff.  By way of further response, EMPWR is without knowledge or information sufficient to admit or deny this request as any communications were made by a third party over which EMPWR had no control.  It is further denied that EMPWR is a telemarketing firm.

4. **Objection.** The term business relationship is not defined.  By way of further objection, the Request is not limited in time and is overly broad.

5. **Response:** Admitted.

6. **Response**: Denied.  EMPWR is without sufficient information or knowledge to admit or deny the request.  By way of further response, this request seeks information of a third party over which EMPWR has no control.

7. **Response**: Denied. EMPWR is without sufficient knowledge or information to admit or deny the request.  By way of further response, see Screen Shot whereby Plaintiff requested and was placed on a do not call list.

8. **Response**: Denied. EMPWR is without sufficient knowledge or information to admit or deny the request.  By way of further response, see Screen Shot whereby Plaintiff requested and was placed on a do not call list.

9. **Objection**: Request No. 9 is compound, overly broad and non-specific. Furthermore the request seeks a response constituting a conclusion . law relating to the ultimate issues in the case.  See, *Gharzerian*.

10. **Objection:** Request No. 10 calls for a conclusion of law to which no response is required.  By way of further response, no class has been certified pursuant to Rule 23. See, *Gharzerian*

11. **Objection**: Request No. 11 calls for a conclusion of law to which no response is required.  By way of further response, no class has been certified pursuant to Rule 23. See, *Gharzerian*

12. **Objection**: Request No. 12 calls for a conclusion of law to which no response is required.  By way of further response, no class has been certified pursuant to Rule 23. See, *Gharzerian*

13. **Response**:  Denied.  By way of further response, EMPWR is not a telemarketing firm.

14. **Response**: Denied. EMPWR did not send any calls.

15. **Response**: Admitted. By way of further response, EMPWR is not a telemarketing company.

16. **Response**: Admitted. By way of further response, EMPWR is not a telemarking company.

17. **Response: Denied.**

18. **Objection**: Request No. 18 calls for a legal conclusion to which no response is required. See, *Gharzerian*

19. **Response**: Denied. EMPWR is without sufficient knowledge or information to admit or deny this request. By way of further response, this request seeks information from a third party over which EMPWR has no control.

20. **Response**: Denied. EMPWR is without sufficient knowledge or information to admit or deny this request. By way of further response, this request seeks information from a third party over which EMPWR has no control.

21. **Response**: Admitted in part. Denied in part. It is admitted that EMPWR does not maintain an FTC Subscription Account Number. It is denied that EMPWR is a telemarking company.

22. **Objection:** Request No. 22 is overly broad and non-specific.

23. **Objection**: Request No. 23 is overly broad and non-specific.

24. **Objection**: Request No. 24 is overly broad and non-specific.

25. **Objection**: Request No. 25 calls for a legal conclusion on an ultimate issue in the case. See, *Gharzerian*

26. **Objection**:  Request No. 26 calls for a legal conclusion on an ultimate issue in the case.  See, *Gharzerian*

27. **Objection:**  Request No. 27 calls for a legal conclusion on an ultimate issue in the case. See, *Gharzerian*

28. **Objection**: Request No. 28 calls for a legal conclusion on an ultimate issue in the case. See, *Gharzerian*

**BELLWOAR KELLY**

By:    */s/ Sheryl L. Brown*
Andrew Bellwoar, Esquire, I.D. #54096
Sheryl L. Brown, Esquire, I.D. #59313
Attorneys for Defendant, EMPWR SOLAR LLC
126 W. Miner Street
West Chester, PA  19382
(P): 610.314.7066
abellwoar@bellwoarkelly.com
sbrown@bellwoarkelly.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

James E. Shelton                    :

      V                              :          Civil Action No. 24-6870-JMY

EMPWR Solar LLC                     :

---

### CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing Supplemental Objections and Responses to Plaintiff's First Set of Discovery and related papers to be served by electronic mail addressed as follows:

> Andrew R. Perrong, Esquire
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> *aperronglaw.com*

> Respectfully submitted:
>
> **BELLWOAR KELLY LLP**

Date: September 23, 2025          By:    *Sheryl L. Brown*
                                    Sheryl L. Brown, Esquire, I.D. #59313
                                    Attorneys for Defendant, EMPWR SOLAR LLC
                                    126 W. Miner Street
                                    West Chester, PA 19382
                                    (P): 610.314.7066
                                    sbrown@bellwoarkelly.com

## VERIFICATION

I, Robby Edge, Managing Partner of Defendant, EMPWR Solar, am familiar with the facts of this claim as it relates to EMPWR Solar, and do hereby verify that to the best of my knowledge, information and belief, the information set forth in the Supplemental Objections and Responses to Plaintiff's Discovery Requests are true and correct.  I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

**EMPWR Solar**

Date: _____09/22/2025_____        _____*Robert Edge*_____

By:  Robby Edge
Title: Managing Partner

SHELTON V. EMPWR

USDC FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Civil Action No. 24-6870-JMY

DEFENDANT'S REDACTION LOG

| Document | Redacted/ Privileged | Date | Author/Sender | Recipients | Subject Matter | Redaction/ Privilege Asserted |
|---|---|---|---|---|---|---|
| Lead list from Launch Marketing/ Millennial Planning Solutions LLC containing Plaintiff's Contact Information | Redacted | N/A | Launch Marketing/Millennial Planning Solutions LLC | N/A | Lead List from Launch Marketing/ Millennial Planning Solution referencing Plaintiff containing (by column) 1.Contact ID 2.First Name 3. Last Name 4. Phone 5.Email 6. Address 8. State 9. Date Lead Generated | Columns 2,3,4,5 and 6 Contain Confidential Private Identifying Information Of Third Parties (other than Plaintiff) |
|  |  |  |  |  |  |  |



# Lead Partnership Agreement

This EMPWR Solar Sales Partnership Agreement (this "**Agreement**"), effective for all purposes as of the __16/09/2024__ ("**Effective Date**"), is entered into by and between __Millennial Planning Solutic__ ("**Partner**"), with its principal place of business at __12418 Big Bend Rd, Kirkwood, MO 63122__, and EMPWR Solar LLC a South Carolina company (the "**Company**"), with its principal place of business at 1007 Johnnie Dodds Blvd Suite 110, Mount Pleasant, SC 29464. Both Partner and Company are a "**Party**," and are collectively the "**Parties**."

**SECTION 1: DEFINITIONS**

1.1    "Referral" means a potential customer or client introduced or identified to the Company by the Partner.

1.2    "Acknowledged Referral" occurs when the Company confirms that the Referral has been recorded as originating from the Partner. The Company reserves the right, in its sole discretion, to reject any Referral if it does not meet the Company's requirements, or if it is determined to be a pre-existing contact or lead in the Company's database, or is currently in active negotiation with the Company.

1.3    "Qualified Lead" means a Referral that fulfills all of the following criteria:

- The Referral must enter into a binding agreement with the Company for the purchase of the Company's products or services;

- The Company must receive the full agreed-upon payment from the Referral, in accordance with the terms of the Referral's agreement with the Company;

- The Referral must not already be an existing customer of the Company, must not be in active negotiations with the Company prior to the referral, and must not have been referred by another party;

- The Referral must comply with all applicable laws and regulations and must not be involved in any activity that could damage the reputation or business of the Company; and

- The Referral must enter into a binding agreement with the Company within a predefined time period from the date of the referral, as agreed upon by the Parties in writing.

The determination of whether a Referral is a Qualified Lead will be made by the Company in its sole discretion. The Company will notify the Partner in writing upon the conversion of a Referral into a Qualified Lead.

**SECTION 2: DUTIES AND OBLIGATIONS**

2.1    Partner Duties: The Partner agrees to perform the following duties:

- Partner will use their best efforts to promote the Company's products and services to potential customers in a professional and ethical manner;

- Partner will refer potential customers to the Company by providing the Company with the potential customer's name, contact information, and any other information necessary for the Company to contact the potential customer;

- Partner will provide continuous support in facilitating communication between the Company and the referred potential customer until such time the Company deems the lead as Qualified or unqualified; and

- Partner agrees to provide regular status reports to the Company regarding their promotion efforts and referrals, as may be reasonably requested by the Company from time to time.

- Partner represents and warrants that it and its Representatives are, and will remain, in compliance during the Initial Term and any Renewal Term hereof with all Applicable Law relating in any manner to the performance of the obligations of Partner and its Representatives hereunder.

2.2   Company Duties: The Company agrees to perform the following duties:

- The Company will provide the Partner with the necessary information about the Company's services to enable the Partner to effectively promote their products and services;

- The Company will track the leads referred by the Partner and keep the Partner informed about the status of each lead. Partner will be given access to both Company's lead management CRM and project management CRM for visibility.

- The Company will pay the Partner the referral fees for Qualified Leads or Sourced Data in accordance with the terms and conditions of Exhibit A of this Agreement; and

- The Company will provide necessary training and support to the Partner to enable them to fulfill their obligations under this Agreement effectively.

**SECTION 3: REFERRAL FEES**

3.1 Fee: The Company will pay the Partner a referral fee for each Qualified Lead in accordance with the terms and conditions of Exhibit A of this Agreement.

3.2 The referral fee will be a fixed fee, sliding rate, or percentage of the total contract value (excluding any applicable taxes) received by the Company from a Qualified Lead for the purchase of the Company's services during the initial term of the agreement with the Qualified Lead. The exact terms are set forth in Exhibit A.

3.3 If the Qualified Lead purchases additional products and services offered by Company after its initial purchase, the Partner may continue to receive additional referral fees at the rate specified in Exhibit A.

3.4 The referral fee will only be paid for Qualified Leads that are not already existing customers of the Company, are not in the Company's current sales pipeline, and have not been referred by another party.

3.5 Payment Terms: The Company will pay referral fees to the Partner according to the terms in Exhibit A and the following payment terms:

- All payments will be made via ACH deposit, as designated by the Partner;

- The Partner is responsible for any taxes associated with the receipt of the referral fee;

- The Company will provide the Partner with a statement showing the calculation of the referral fee for each Qualified Lead when the referral fee is paid;

- The Company reserves the right to withhold payment if it suspects any fraudulent activities or breaches of this Agreement by the Partner.

3.3 Disputes: In case of any dispute over the calculation or payment of a referral fee, the Parties agree to work in good faith to resolve the dispute. If they cannot resolve the dispute, they will refer it to a mutually agreed third party for mediation.

**SECTION 4: CONFIDENTIALITY**

4.1 Definition: "Confidential Information" means any information that a Party ("Disclosing Party") discloses to the other Party ("Receiving Party") that is either designated as confidential at the time of disclosure or should be reasonably understood to be confidential given the nature of the information and circumstances of disclosure. Confidential Information may include, but is not limited to, business plans, customer data, financial information, marketing strategies, non-public information relating to products or services, and other proprietary information. Parties understand and acknowledge that, during the Party's relationship under this Agreement, that either Party may receive or otherwise have access to Confidential Information. Parties agree that from, and after the Effective Date, Parties will keep confidential and will not disclose directly or indirectly any such Confidential Information to any third party, except as required to fulfill each Party's duty during the Initial Term and any Renewal Term of this Agreement. Neither Party will use such Proprietary Information except for each Party's benefit and for Party's business and will not misuse, misappropriate, or exploit such Confidential Information in any way.

4.2 Non-Disclosure: The Receiving Party agrees to keep all Confidential Information strictly confidential. The Receiving Party will not disclose or make available any Confidential Information to any third party without the prior written consent of the Disclosing Party. The Receiving Party will use the Confidential Information solely for the purpose of performing its obligations under this Agreement.

4.3 Exceptions: The obligations under this section will not apply to any Confidential Information that: was already lawfully known to the Receiving Party at the time of disclosure; is disclosed to the Receiving Party by a third party who had the right to disclose it; is publicly available through no fault of the Receiving Party; or is independently developed by the Receiving Party without use of or reference to the Disclosing Party's Confidential Information.

4.4 Required Disclosure: If the Receiving Party is required by law, court order, or any government or regulatory authority to disclose any of the Confidential Information, it will give the Disclosing Party prompt written notice of such requirement before the disclosure and, if possible, enough time to contest the disclosure.

4.5 Return of Confidential Information: Upon termination of this Agreement, or upon the Disclosing Party's request, the Receiving Party will return all Confidential Information and all copies, notes, or extracts thereof to the Disclosing Party unless required by law to retain it.

4.6 Continuing Obligations: The Receiving Party's obligation to protect the confidentiality of the Confidential Information will survive termination of this Agreement and continue until such time as the Confidential Information becomes public knowledge other than through the Receiving Party's breach of this Agreement.

4.7 Ownership: Partner acknowledges that the Company own all rights, title, and interest in the service(s), product(s), and all intellectual property rights therein. Nothing in this Agreement gives Partner any right, title, or interest in the service(s), product(s) or any associated trademarks, except the right to sell or service the service(s) or product(s) in accordance with this Agreement.

**SECTION 5: NON-SOLICITATION**

5.1 Non-Solicitation of Representatives, Employees, Partners: During the period commencing on the date of this Agreement and ending on the date that is the two (2) year anniversary of the date on which this Agreement is terminated (the "**Non-solicitation Period**"), Partner shall not, directly or indirectly, recruit, solicit, induce, or influence (or seek to induce or influence) any person who is employed by, hired by, affiliated with, or acts as a Partner of Company, Finance Partner of Company, Installation Partner of Company, Representative, or employee, or representative, or contractor of any Partner of Company, or salesperson for Company, to terminate or alter its/his relationship with Company or any of its Partners or contractors.

5.2 Customer Data: As between the Parties, Company owns all right, title, and interest, including all Intellectual Property Rights therein, in and to Customer Data entered into the software of Company. Once submitted to Company, Partner

hereby grants to Company exclusive rights to all Customer Data, and as such, that Customer Data shall not be provided to any other relationship outside of Company except for Company's benefit.

## SECTION 6: TERM AND TERMINATION

6.1 Term: This Agreement shall commence on the date first set forth above and will continue indefinitely unless and until terminated by either Party.

6.2 Termination without Cause: Either Party may terminate this Agreement without cause upon providing thirty (30) days' prior written notice to the other Party.

6.3 Termination for Cause: Either Party may terminate this Agreement immediately upon written notice if the other Party:

- Breaches any material term or condition of this Agreement and fails to cure such breach within thirty (30) days after receipt of written notice of the same, unless such breach is such that it cannot be cured within thirty (30) days, in which case the breaching Party shall commence such cure promptly after receipt of such notice and continuously pursue such cure to completion;

- Becomes the subject of a voluntary or involuntary bankruptcy, insolvency, reorganization, liquidation, dissolution, receivership, or similar proceeding, or otherwise ceases to do business; or

- Fails to comply with any applicable laws or regulations, which may harm the reputation or business of the other Party.

6.4 Effect of Termination: Upon termination or expiration of this Agreement for any reason:

- The rights granted to the Partner under this Agreement will immediately cease;

- The Partner must promptly discontinue all promotion of the Company's products or services; and

- Within thirty (30) days after the termination or expiration of this Agreement, Partner shall pay to Company all "M1 Advanced Payments" that Partner owes to Company under this Agreement, if any, at the time of termination or expiration. After the expiration of this Agreement, Partner shall receive all remaining fees due and payable for projects submitted prior to expiration that reach relevant milestones, as applicable, and in accordance with this Agreement as of the date of such termination or expiration, less any amounts then- owed by Partner to Company.

6.5 Survival: The rights and obligations of the Parties set forth in this Section 6 and any right, obligation, or required performance of the Parties in this Agreement which, by its express terms or nature and context is intended to survive termination or expiration of this Agreement, will survive any such termination or expiration.

## SECTION 7: GENERAL PROVISIONS

7.1 Governing Law: This Agreement shall be governed by and interpreted in accordance with the laws of the state of South Carolina.

7.2 Entire Agreement: This Agreement, including any exhibits and appendices, contains the entire agreement between the Parties and supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, whether oral or written, of the Parties with respect to the subject matter hereof.

7.3 Amendments: This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party.

7.4  Waiver: No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver.

7.5  Indemnification: Each Party agrees to indemnify and hold the other harmless from any claims, losses, damages, liabilities, or expenses incurred as a result of the negligent or intentional acts or omissions of the indemnifying Party.

7.6  Severability: If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

7.7  Notices: All notices or other communications required or permitted under this Agreement must be in writing. Such notices may be delivered personally, sent by a recognized overnight delivery service, telecopy, or electronic mail, provided that receipt of the communication is confirmed. Notices should be addressed to the relevant Party at the address outlined in this Agreement, or to any other address that the recipient Party has provided in writing to the sender. A notice will be considered effectively given at the time of personal delivery, or at the time of confirmed receipt in the case of delivery by overnight service, telecopy, or electronic mail.

       Notice to EMPWR:

       EMPWR Solar LLC
       1007 Johnnie Dodds Blvd.
       Suite 110
       Mount Pleasant, SC 29464
       Email: admin@empwrsolar.com

       Notice to Partner:

       _____
       _____
       _____
       _____

7.8  Independent Contractor Relationship: It is understood that the Partner is an independent contractor and not an agent, partner, or employee of the Company. The Partner shall not have any authority to enter into any agreements or obligations on behalf of the Company.

7.9  Non-Exclusivity: The relationship between the Company and the Partner is nonexclusive. Both Parties are free to enter into similar agreements with other parties unless otherwise specified in this Agreement.

7.10  No Assignment: The Partner may not assign or transfer this Agreement, or delegate its obligations under this Agreement, without the Company's prior written consent.

7.11  Dispute Resolution: In the event of any dispute arising out of or related to this Agreement, the Parties agree to negotiate in good faith to resolve the dispute. If the Parties are unable to resolve the dispute, they agree to submit the dispute to mediation before resorting to litigation.

7.12  Counterparts: This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective for all purposes as of the Effective Date.


**COMPANY:**

EMPWR Solar LLC

Managing Partner: ___Robert Edge_____

Signature: ___*Robert Edge*_____


**PARTNER:**

Organization Name: __Millennial Planning Solution__

Authorized Representative: __Brennan McCloud_____

Signature: ___Brennan McCloud (Sep 16, 2024 14:07 CDT)_____

**EXHIBIT A: PAYMENT TERMS**

This Exhibit A forms part of the Agreement and is subject to the terms and conditions of the Agreement. In the event of any conflict between the terms of this Exhibit A and the terms of the Agreement, the terms of the Agreement will prevail. The referral fee will be determined based on the following structures:

**Example of Total Sales Commission Calculation:**
Total Sales Commissions are calculated based on (System Size) multiplied by (Fixed Rate).

System Size: 9.43kW
Fixed Referral Rate: $0.35 per watt

9.43kW (9,430 watts) x $0.35 (per watt) = $3,300.50 Total Referral Fee

**Advanced Payment (M1) and Final Payment (M2):**

Company shall pay Partner the Fees in the amounts set forth on this Pricing Schedule. Such Fees will be paid to Partner under the following procedures and conditions:

**M1 "Advanced Payment"**

**Accepted Contract Packet / Deal Review Complete Requirements for M1:** For Loan, Cash, and TPO/PPA Projects- Funding Terms if an **(M1)** payment is provided by Company:

  a)  Company shall pay Partner an "advanced" payment (M1) of the Fees owed for each of the Projects within ten (10) calendar days of Company issuing a DRC or "Deal Review Complete" status for each project. All Projects that have qualified for an (M1) for a specific week will be processed on Monday for the following week's Monday funding.

  b)  For Dividend / Goodleap / Sunlight / Mosaic / LightReach all (M1) Fees paid to Partner will be $1,000.

**To Achieve "Deal Review Complete" Status a Project Must:**

  •  Obtain fully executed Installation Agreement and Proposal.
  •  Obtain approved credit application (if applicable) & loan documents (including stipulations)
  •  Obtain required any site survey photos needed for the Project's progression.
  •  Obtain any additional documentation required by local utilities such as HOI, recent utility bill, or past usage, or any other required documentation for the progression of Project.

**M2 "Final Payment"**

**"Installation Complete" Requirements for Final Commissions Payment:** Company shall not owe Partner any remaining commissions until Company has completed installation and received payment from lender. Once lender disbursement has been initiated by the lender (also known as Company Financial Partner) the remaining commission payment will be disbursed within ten (10) days. For avoidance of doubt, lender disbursement only occurs when a project reaches "Install Complete" under the following criteria:

  •  Modules, inverters, and racking have been "completely" installed
  •  All electrical work has been completed on site (including MPU, if applicable)
  •  Quality verification by lender has been completed
  •  Project is final inspection ready
  •  All requirements by specific lender to release funding have been met per their requirements

"Installation Complete" commissions payment may be delayed if the Project was sold using a payment method requiring additional steps for final payment, including, by way of example and not limited to, a Customer refusing to sign a completion certificate, final packet approvals by a Finance Partner or cash paying Customers refusing to issue final payment.





## EMPWR Solar – Consultation Expectations for OneSource & Heliose Leads

**Applies To:**
All consultations booked through lead partners **OneSource** and **Heliose**

---

### ◆ Format & Platform

- **All consultations must be conducted via Zoom.**

    - **Phone calls are not to be offered** unless there is a confirmed technical issue preventing Zoom access.

    - Zoom links are automatically sent to customers via email when the appointment is scheduled.

    - All EMPWR staff (Appointment Setters and Sales Reps) are expected to **reinforce the Zoom expectation** when confirming with the customer.

---

### ◆ Calendar & CRM Integration

- All appointments are **automatically synced** to the assigned sales rep's **Google Calendar**.

- Appointments are stored and managed in **GoHighLevel (GHL)**.

- Reps are responsible for **properly dispositioning each opportunity** in GHL **immediately after the consultation** to reflect the outcome accurately (e.g., No Sit, Sat: No Sale, Sat: Sale Pending, Sold, Lost, etc.).

---

### ◆ Consultation Length & Structure

- Each consultation should be treated as a **full 60-minute presentation**.

- These are **not quick check-ins** — they are structured, high-impact sales consultations.

During the call, reps must:

- **Screen share the full proposal** and walk the customer through each section.

- Highlight EMPWR's **key differentiators** and explain all financial/technical details.

- Address all questions with clarity, confidence, and transparency.

---

### ◆ Environment & Professionalism

- Reps must be in a **quiet, stationary environment — no consultations from vehicles** or on the move.

- **Webcam must be on**, and reps must appear prepared and professional.

- The proposal should be **fully reviewed and ready** before the appointment starts.

- No multitasking, background distractions, or casual presentation styles.

---

### ◆ Why This Matters

- These customers are receiving **multiple bids** and comparing options closely.

- A polished, professional consultation is critical to improving our **close ratio**.

- Inconsistent or unprofessional experiences **undermine our credibility** with both customers and lead partners.

---

**Bottom Line:**
Every consultation must reflect the **EMPWR standard** — clear expectations, professional delivery, and complete follow-through in GHL. Treat each appointment as if it's the one that determines our reputation.



### <u>SOP: EMPWR Solar Reps: Add "Out of Office" Blocks to Google Calendar</u>

**Purpose:**
*To ensure accurate availability is reflected in GoHighLevel (GHL) by adding personal "Out of Office" time directly to the synced Google Calendar.*

**Background:**
*EMPWR Solar Sales Reps' Google Calendars are fully synced with GoHighLevel. Any blocks marked as "Out of Office" in Google Calendar will prevent appointments from being booked during those times.*

**When to Add an Out of Office Block into Google Calendar**

- Time off (vacation, PTO, sick days)

- Personal appointments (doctor, errands, family obligations)

- Any time you are **unavailable** to run EMPWR Solar consultations

---

### Adding Out of Office Block in Google Calendar:

1. **Open EMPWR Solar Google Calendar.**

2. **Create a New Event.**
   Click on the desired time block and select **"Out of Office"** as the event type.

3. **Title the Event Clearly.**
   Examples:

   - "OOO – Vacation"
   - "Lunch Break"
   - "Unavailable – Personal"

4. **Set the Correct Time & Date.**

   - Use exact time windows (avoid "All Day" unless you're off the entire day).

       ○   Use recurring options if applicable (e.g., daily lunch breaks).

5. **Ensure Event Status is "Busy".**
   This prevents GHL from booking during that time.

6. **Save the Event.**
   Confirm the event shows as a blocked time in your calendar.



## SOP: Sales Reps Dispositioning Leads in GoHighLevel

*This process must be completed **daily** and **as appointments occur** to ensure we are providing lead partners with accurate, up-to-date reporting.*

---

One appointment is **Booked**, all sales reps must update the **Stage, Status**, **Notes** as well as the corresponding **DQ Reason, Lost Reasons**.

### 1. No Sit: Open

- **Definition:** Appointment did not occur - future appointment **IS** possible.

- **Action:**

    - Change **Stage** to **"No Sit: Open"**

    - Add details/plan of action in the **Notes** field (**required**)
        - Leave **Status** as **"Open"**
        - Angie will attempt to reschedule


### 2. No Sit: Lost

- **Definition:** Appointment did not occur - future appointment **IS NOT** possible.

- **Action:**

    - Change **Stage** to **"No Sit: Lost"**

    - Add details of action in the **Notes** field (**required**)
        - Change **Status** from **"Open"** → **"Lost"**
        - Enter **Lost Reason** if available

    - If **Disqualified (DQ)**:
        - Change **Status** from **"Open"** to **"Lost"**
        - Enter **DQ Reason**

## 2. Sat: No Sale

- **Definition:** Appointment **Sat** and lead is disqualified, not moving forward, or follow-up is needed.

- **Action:**

  - Change **Stage** to **"Sat: No Sale"**
  - Add details/plan of action in the **Notes** field (**required**)

  - If **no follow-up is required**:
    - Change **Status** from **"Open"** to **"Lost"**
    - Enter **Lost Reason**

  - If **Disqualified (DQ)**:
    - Change **Status** from **"Open"** to **"Lost"**
    - Change **Lost Reason** to **"DQ"**
    - Enter **DQ Reason**

## 3. Sat: Sale Pending

- **Definition:** Appointment **Sat**; and rep is actively working to close.
- **Action:**

  - Change **Stage** to **"Sat: Sale Pending"**
  - Add details/plan of action in the **Notes** field (**required**)
  - Continue updating opportunity **Stage** until it becomes **"Sat: No Sale"** or **"Sold / Deal Won"**

## 4. Sold / Deal Won

- **Definition:** Contract signed; deal closed.
- **Action:**

  - Change **Stage** to **"Sold / Deal Won"**
  - Change **Status** to **"Won"**
  - Enter **Notes** as needed

# 📋 SOP: FCC-Compliant Solar Sales Call & Text Procedures

## 1. Purpose & Scope

This SOP ensures that all outbound calls and texts from the call center comply with the **Federal Communications Commission (FCC) Telephone Consumer Protection Act (TCPA)** and related state laws. It applies to all employees making **manual calls** and sending **manual text messages** for solar sales appointments.

---

## 2. Key Legal Considerations

Since our team **does not use an autodialer**, the risk of TCPA violations is lower. However, compliance still requires strict adherence to consent, opt-out, and DNC (Do Not Call) rules.

**Key FCC Rules to Follow:**

- **No Autodialing:** All calls must be manually dialed. No predictive dialers or robocalls.

- **Express Written Consent:** Required before sending marketing texts or pre-recorded messages to cell phones. This is obtained by our lead provider.
- **Do Not Call (DNC) Compliance:** Maintain and respect internal and national DNC lists.

- **Calling Time Restrictions:** Only call between **8:00 AM and 9:00 PM local time** of the recipient.

- **Identification:** State company name and purpose of call at the beginning.

- **Opt-Out Requirements:** Provide a simple way for customers to opt out of future calls/texts.

- **Recordkeeping:** Keep records of consent, opt-outs, and DNC compliance for at least 4 years.

---

# 3. Call Center Procedures

## 3.1 Pre-Call Checklist

1. **Check Consent Status:**

   o   Verify the prospect has not opted out and is not on the DNC list.

   o   Confirm express consent for marketing calls/texts if applicable.

2. **Verify Time Zone & Call Window:**

   o   Ensure call falls between **8 AM – 9 PM** recipient's local time.

3. **Prepare Contact Details:**

   o   Name, phone number, lead source, and any prior notes must be reviewed before calling.

---

## 3.2 Call Script Guidelines

**Required Disclosures at Start of Call:**

- Identify yourself: "Hi, this is [Agent Name] calling from EMPWR Solar."

- State the purpose: "I'm reaching out about scheduling your free solar consultation."

**Compliance Notes:**

- Be clear and transparent—avoid deceptive or misleading language.

- Never use a pre-recorded message unless you have **prior express written consent**.

- Do not pressure prospects after they decline—mark them as Do Not Call.

---

### 3.3 Text Messaging Procedures

- **Manual Sending Only:** Each text must be manually typed or clicked to send.

- **Consent Confirmation:** Only text individuals who have opted in or provided their number for contact.

- **Required Opt-Out Language:**

    o First message must include: "Reply STOP to opt out."

- **Respect Opt-Outs Immediately:** Update records in CRM so no further texts are sent.

---

# 4. Handling DNC and Opt-Outs

1. **Immediate Action:** If a prospect asks not to be called/texted, mark them "DNC" in CRM immediately.

2. **Company DNC List:** Maintain an internal DNC list updated daily.

3. **Scrub Leads:** Run lead lists against national and internal DNC lists before dialing.

---

# 5. Recordkeeping & Audit Requirements

- Maintain logs of:

    o Calls placed (date, time, agent)

    o Consents received (written, webform, or verbal)

    o Opt-outs and DNC requests

- Store records securely for **4 years** in case of audits or disputes.

---

## 6. Training & Quality Assurance

- **Initial Training:** All agents receive TCPA/FCC compliance training before making calls.

- **Refresher Training:** Conduct quarterly compliance refreshers.

- **QA Monitoring:** Randomly audit calls weekly for compliance (disclosures, call times, opt-out handling).

---

## 7. Escalation Procedure for Complaints

- Document all complaints immediately in CRM.

- Notify manager within 24 hours.

- Investigate and confirm if corrective action or lead source review is required.