IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES E. SHELTON**, individually and on behalf of all others similarly situated, | : | Case No. 2:24-cv-6870 |
| Plaintiff, | : | **CLASS ACTION** |
| v. | : | **JURY TRIAL DEMANDED** |
| **EMPWR SOLAR LLC** | : | |
| Defendant. | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO BIFURCATE DISCOVERY**

**I.   INTRODUCTION**

Defendant EMPWR Solar LLC (EMPWR) makes a significant ask of this Court: seeking to split discovery into two vaguely delineated phases, first on some "threshold issues" pertaining to Mr. Shelton's individual claim, and only then, maybe, on the class claims. Its basis for doing so? Because it "is believed and therefore averred" that Plaintiff (somehow differently than all other class members and for reasons that EMPWR does not make clear) consented to the subject communications. That is speculation, not evidence, and it cannot satisfy EMPWR's burden in demonstrating that the bifurcation it seeks is appropriate. EMPWR's position is doubly problematic because it admitted in its discovery responses that it did not have consent to contact the Plaintiff, a materially different position to that advanced here. Even so, the question of whether class members consented to the communications is a question that courts in this Circuit and elsewhere routinely hold is appropriate for resolution on a classwide basis and does not require individualized factfinding or discovery warranting bifurcation. EMPWR's motion further misapplies its burden and the right standard. Given the Third Circuit's disfavor of bifurcation,

EMPWR's motion, which relies on no actual evidence, but conjecture of what discovery *might* reveal, is insufficient to demonstrate the "good cause" required to avail itself of the exception, not the rule, that discovery should be bifurcated. As a result, the motion should be denied.

## II.   ARGUMENT

District courts have broad discretion to control discovery. *Crawford—El v. Britton*, 523 U.S. 574, 598-99 (1998). Requests to bifurcate discovery are controlled by Rule 42(b). *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 568 (D. Del. 2013). The Third Circuit has "condemned the district court's practice of bifurcating [discovery] as a general rule." *Barr Lab., Inc. v. Abbott Lab.*, 978 F.2d 98, 115 (3d Cir. 1992). "Bifurcation is the exception and the moving party bears the burden of demonstrating that bifurcation is needed… As a practical matter, bifurcation of discovery…is extremely rare, since bifurcation often delays cases and leads to serial motion practice." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 2016 WL 4541870, at *2 (D.N.J. Aug. 31, 2016). Bifurcation of discovery is often "counterproductive." Manual For Complex Litigation (Fourth) ("MCL 4th") § 21.15 (2015).

*Purported Consent Does Not Warrant Bifurcation*

That bifurcation is inappropriate is readily apparent here, especially because the Defendant seeks to bifurcate discovery on mere conjecture that the Plaintiff may have consented to the communications, instead of actual evidence that he did so, and after *Defendant stated in an interrogatory response that it had no evidence of consent*. This is doubly problematic, both from a bifurcation perspective as well as an evidentiary one. Start with the evidentiary one. In a TCPA case, consent is an affirmative defense for which Defendant bears the burden of proof. *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 340 F. Supp. 3d 445, 452 (E.D. Pa. 2018). The rationale for this rule is simple: if the Defendant obtained legally sufficient consent for the calls and maintained such records as the law requires it to do, it should be able to adduce evidence of

consent in support of its proposed motion for bifurcation. That it does not do so is telling, particularly insofar as EMPWR has already *admitted*, in its interrogatory responses, attached herein as Exhibit A, when asked for any consent it had to contact Plaintiff, it replied referencing its response to Interrogatory 5. In response to that interrogatory, Defendant replied, "None."

In essence, EMPWR asks this Court to bifurcate discovery not on the actual evidence of consent it will be required to present to meet its burden at trial or summary judgment, but based on conjecture as to what its own evidence is somehow expected to show, even when it previously admitted that it did not have consent. In this respect, EMPWR provides no reason or explanation for why it still doesn't have the evidence it's required to have in its possession, and that it previously admitted it did not have. This is indicative of the inference that it possesses no evidence of consent, which is simply being used as a red herring to obtain bifurcation. Given that any evidence of the Plaintiff's purported consent should be in Defendant's possession, particularly as Defendant will be required to adduce it, but has not, and in fact previously averred it had no such evidence, the logical conclusion is that consent evidence does not exist. If EMPWR actually had evidence of consent, it should have produced it by now. Instead, it stated in a sworn interrogatory response that it had "None."

*Second*, the issue of consent and the consent evidence (including apparent lack thereof) pervades throughout the entire class and is not simply an issue unique to Plaintiff which would warrant bifurcation. As the Middle District explained in *Friel v. Line 5, LLC*, No. 3:24CV1866, 2025 WL 2422617, at *1 (M.D. Pa. Aug. 21, 2025):

> Defendant Line5 filed an answer to Friel's complaint. Line5's answer does not raise any defenses unique to Friel's individual claims, only defenses common across the putative TCPA classes. . . . Line5 has not otherwise demonstrated why Friel's specific TCPA claims would be any different from the claims of the putative class members. The court thus sees no reason to bifurcate, trifurcate, or otherwise order that discovery be conducted in phases at this time.

As here, in that case, the defendant filed an answer that pled the affirmative defense of consent, and that issue is a uniform, classwide question which is capable of common proof across all class members because the consent (or lack thereof) will be premised on the *very same set of evidence with respect to the Plaintiff as the Class*. It is for this reason that courts routinely *certify* TCPA class actions when there even exists some evidence of consent (there is none here), but where uniform issues pervade that consent on a class basis:

> The sufficiency of the consent procedures used on Myjobscorner.com under the TCPA is an issue for every Proposed Class Member. Should the Court grant certification, and should the Court subsequently rule that the consent procedures were inadequate under the law, such a determination would render moot the individualized assessment of whether individual Proposed Class Members visited Myjobscorner.com. This dynamic incentivizes Proposed Class Members to prioritize the issue of Myjobscorner.com's procedures. Therefore, the shared issue of whether Myjobscorner.com adequately obtained consent is "more substantial" than the individualized inquiries as to whether Proposed Class Members visited the website.

*Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024 WL 4007345, at *5 (N.D.N.Y. Aug. 30, 2024) (certifying class on common legal issues of consent).

Furthermore, just like in *Aley*, there is no indication that the Defendant gathered telephone numbers or any purported consent in a materially different way than it gathered the Plaintiff's. As such, the lack of consent would apply uniformly to all members of the Class and across the Class. *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 872 (N.D. Ill. 2024). As such, the Defendant's purported consent (none) is identical for all putative class members. *See, e.g., Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025) (relying on several TCPA cases in rejecting a bifurcation of discovery holding, "the distinction between merits discovery and class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery."); *Blair v. Assurance IQ LLC*, No. 23-16, 2023 WL 6622415, at *6 (W.D. Wash. Oct. 11, 2023); *Ahmed v. HSBC Bank*

*USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst.").

Relatedly, even if there somehow existed some evidence of consent that was uncovered at a later stage (a questionable proposition as an initial matter given Defendant's interrogatory response), the associated consent records would simply be readily available electronically stored records of the type that courts routinely hold are readily accessible on a daily basis, negating any allegations of burden. Once those records are collected, which is no more burdensome for records with respect to the Plaintiff than other class members, then the Plaintiff, not the Defendant, will then bear the cost and burden of analyzing the purported consent records. Simply put, there is little to no burden or prejudice on the Defendant to obtaining all class consent records at one and a great prejudice to the Plaintiff, who would be deprived of the information he needs to develop his theory of the case, propound additional discovery, and make the "rigorous" showing he is required to at class certification. In sum, purportedly individualized issues of consent (with an admitted lack of consent) is insufficient for Defendant to meet its burden.

<u>*Bifurcation Would be Wasteful and Prejudicial*</u>

But even purring aside Defendant's red herring consent issues as justification for its proposed bifurcation, the proposed bifurcation is also wasteful and prejudicial and guarantees that the parties will need to duplicate their work. First, the parties would undertake "individual merits" discovery on Mr. Shelton's claim on the purported issue of non-existent consent and all that entails: written discovery requests, depositions, and then expert disclosures and expert depositions, all limited just to the individual consent of the Plaintiff. Then, Defendant would file a dispositive motion to Plaintiff's *individual claims*. And then, should the Court deny that

motion, the parties have to start all over again, serving discovery requests and taking depositions of the same witnesses a second time, but this time focusing on *class certification* and *class consent* issues, as well as the remaining issues on the class claims. And after that, there would be a second round of dispositive motions, including class certification and summary judgment, on the class claims. All told, this means at least *two* rounds of written discovery relating to individual liability and class liability, *two* rounds of depositions (with the same witnesses being deposed two times), and then *two* rounds of summary judgment briefing, all on the same critical issue that it has already averred it does not have any evidence of: does EMPWR have legally sufficient evidence of consent to contact class members?

This is the opposite of judicial economy. Indeed, as the Middle District has observed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co.*, No. 3:CV-14-0282, 2014 WL 4630852, at *4 (M.D. Pa. Sept. 15, 2014). And, as explained above, Defendant raises no defenses unique to Plaintiff's individual claims, only defenses common across the classes. *Friel*, 2025 WL 2422617, at *8.

The Court should deny Defendant's motion to bifurcate for this reason *alone*. *See id.* (denying similar motions to bifurcate merits and class discovery in TCPA cases); *EQT Prod. Co. v. Terra Servs., LLC*, No. CV 14-1053, 2014 WL 12838677, at *1 (W.D. Pa. Oct. 22, 2014) ("Terra's proposal would likely result in deposing the same witnesses twice—once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation."). Apart from the duplication of discovery outlined above, Defendant's proposal is bound to lead to additional discovery disputes and proceedings that would be completely unnecessary without

bifurcation. There is significant overlap between discovery relevant to the merits of Plaintiff's individual claims and issues of class certification. Indeed, "[class certification] analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal citations and quotations omitted); *Charvat v. Plymouth Rock Energy, LLC*, No. 15CV4106JMASIL, 2016 WL 207677, at *2 (E.D.N.Y. Jan. 12, 2016) (denying motion to bifurcate merits and class discovery in TCPA action and explaining that "bifurcation would have the opposite effect [of "promot[ing] judicial efficiency or a prompt resolution of the case"]."); Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro. 23(c)(1)(A) ("Active judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between 'certification discovery' and 'merits discovery.'").

As explained above, this overlap between class and merits discovery is evident in the only issue EMPWR lists, that of consent, which is a non-merits affirmative defense. EMPWR identifies no merits-based questions that are unique to Plaintiff on which it intends to seek discovery. By not identifying any individualized defenses warranting bifurcation, Defendant dooms its motion. As another Court ruled when denying a motion to bifurcate in a TCPA case:

> The Court has reviewed the parties' joint status report. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in *Walmart v Dukes* has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*Katz v. Allied First Bank, SB*, No. 22-cv-5277, ECF No. 14 (N.D. Ill. Jan. 3, 2023). Apart from the duplication of discovery outlined above, Defendant's half-baked proposal is bound to lead to

7

additional discovery disputes and proceedings that would be completely unnecessary without bifurcation. At bottom, apart from consent, EMPWR identifies no other non-overlapping issues relevant to the merits of Plaintiff's individual claims and issues of class certification. Given this demonstrable overlap between individual and class issues on the singular issue Defendant identifies, that of consent, bifurcation would "belie principles of judicial economy, as the Court may be forced to spend time and resources resolving discovery disputes over what is 'merit' discovery as compared to 'class' discovery." *In re Plastics Additives Antitrust Litig.*, No. CIV.A. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004).

EMPWR's filing simply points to various rules, including proportionality, and then says only that it "believes" consent exists and that class discovery is "burdensome." That is not *particularized* proof of burden and does not establish good cause required by the Third Circuit to show entitlement to its proposed bifurcation. Other courts have agreed. *See, e.g.*, *Grippo*, 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025) (citing cases); *Nock v. PalmCo Admin., LLC*, No. 24-CV-00662, 2025 WL 100894, at *3 (D. Md. Jan. 15, 2025) ("Because individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes [and demand Court time]."). Furthermore, as alluded to above, the Defendant has not highlighted any aspect of the Plaintiff's individual claim that is allegedly unique or individualized to support its position. For this reason *alone*, courts in TCPA cases have rejected bifurcation requests, just as the court in *Simmons v. Author Reputation Press LLC*, No. CV 24-12330-BEM, 2025 WL 863601, at *2 (D. Mass. Mar. 18, 2025) held:

> Defendant has provided the Court no specific basis on which to conclude that Plaintiff's individual claims are particularly vulnerable to early defeasance. Rather, Defendant has merely pointed out that individual claims are subject to individual defenses, but that is true for all putative class-action plaintiffs.

EMPWR's other authorities do not help it. In *Katz v. Liberty Power Corp., LLC*, the Court was presented with a clear, documented deficiency in the plaintiff's individual claim, namely, based on *actual record evidence* (unlike here), that the plaintiff's telephone number did not qualify for TCPA protection because it was a business number. No. 18-CV-10506-ADB, 2019 WL 957129, at *1 (D. Mass. Feb. 27, 2019). In contrast to *Katz*, Defendant points to no record evidence demonstrating its entitlement to the proposed bifurcation. And *Deleon v. Time Warner Cable LLC* was not even a TCPA action; rather, it was an employment discrimination action that rested on particularized issues with respect to the plaintiff's own meal and rest break habits. No. CV 09–2438 AG (RNBX), 2009 WL 10674767, at *2 (C.D. Cal. Nov. 2, 2009). Similarly, the issue in *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, was one in which bifurcation focused on the esoteric issue of "whether the faxes sent were informational or whether their apparent informational content was a sham and the faxes were in reality advertisements." No. CIV.A. 12-2132 FLW, 2014 WL 413534, at *5 (D.N.J. Feb. 4, 2014). The bifurcation in that case is not bifurcation into individual merits and class discovery, as Defendant seeks here, but instead bifurcation into a discrete legal issue that pervaded across the entire class.

EMPWR's citation to *Twombly*'s cost concerns is a red herring, too. *Twombly* addresses pleading standards and does not stand as a blanket license to restrict otherwise relevant discovery. That discovery is costly is an unfortunate fact of litigation and is insufficient to demonstrate prejudice. "Defendant has not demonstrated significant prejudice by its simple assertion that discovery costs money." *Grippo*, 2025 WL 596095, at *2. And it is unclear how Plaintiff's retention of an expert to review classwide consent and other call record information, *at Plaintiff's expense*, somehow increases EMPWR's litigation costs or increases its burden and makes discovery "burdensome and expensive." To the contrary, any expense is the Plaintiff's. So

9

too as to EMPWR's confidentiality concerns. The appropriate limitation on class discovery, as the Court has already recognized, was to seek Plaintiff's counsel's assurances that he would not attempt to contact putative class members prior to class certification. To the extent that additional confidential information will be revealed in the course of discovery, the appropriate remedy is a confidentiality and protective order, not bifurcation.

Finally, the proposed bifurcation would prejudice the Plaintiff in preventing him from effectively seeking class certification. As another Court held while rejecting a substantially similar bifurcation request from a TCPA defendant highlighting prejudice:

> As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).
>
> Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).
>
> In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23."
>
> Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is — as Bond persuasively argues — necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that individual and class [claims overlap]).

>And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").
>
>And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

*Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025) (cleaned up).

What's more, bifurcation would delay discovery necessary to demonstrate the class claims, it would prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed, particularly evidenced by recent discovery disputes. Indeed, in this sense, the requested relief is akin to a motion to stay since the Defendant is seeking to avoid all class discovery for an indefinite period of time. A stay-related delay would prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed. *Saleh v. Crunch, LLC*, No. 17-62416-CIV, 2018 WL 11264884, at *2 (S.D. Fla. Feb. 28, 2018) ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) holding that plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend," among other reasons).

The risk to the putative class members' interests is not merely hypothetical. Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members, which is all the more concerning given the apparent evidentiary struggles starting to creep up here. *E.g., Levitt v. Fax.com*, No. CIV. WMN-05-949, 2007 WL

11

3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011) (similarly granting summary judgment). As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference, let alone refuse bifurcation, as in *Carter*. There are also other prejudices not associated with calling records that the Plaintiff will face from a stay. *See Sanaah v. Howell*, No. CIVA.08CV02117REBKLM, 2009 WL 980383, at *1 (D. Colo. Apr. 9, 2009) ("with the passage of time, the memories of the parties and other witnesses may fade, . . . or documents may become lost."). Here, the Plaintiff is simply seeking to proceed in the ordinary course.

> In denying a motion to stay, another federal court considered this issue in a TCPA case:
>
> In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages. . . . .  In the meantime, it is clear that critical evidence, including records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19 CIV. 890 (CM), 2019 WL 4382204, at *7 (S.D.N.Y. Aug. 19, 2019). With respect to these well-reasoned authorities, including on economy, overlap, and prejudice, this Court should similarly hold bifurcation is unwarranted.

## **CONCLUSION**

Bifurcation is not warranted here. The Defendant's motion should be denied.

RESPECTFULLY SUBMITTED AND DATED this October 7, 2025.

/s/ *Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
E.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

October 7, 2025

/s/ *Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
E.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com