IN THE UNITED STATES DISTRICT COURT
FOR THE ESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES E. SHELTON**, individually and on behalf of all others similarly situated, | : : : | Case No. 2:24-cv-6870 |
| Plaintiff, | : : | **CLASS ACTION** |
| v. | : : : | **JURY TRIAL DEMANDED** |
| **EMPWR SOLAR LLC** | : : | |
| Defendant. | : : : | |

**MOTION AND BRIEF IN SUPPORT OF MOTION
TO COMPEL EMPWR SOLAR LLC
TO PROVIDE DISCOVERY RESPONSES,
TO EXTEND DEADLINES, AND FOR SANCTIONS**

1

**INTRODUCTION**

By conference of the Court on September 24, 2025, the parties reached an agreement regarding production of Defendant's calling list responsive to Request for Production No. 20 and the Court ordered the list's production, and Defendant agreed to do so. On October 8, 2025, Defendant produced an Excel spreadsheet, which was converted to PDF format as an image and entitled "10.7.25 Redacted Lead List per Judge Order.pdf." This is a partial screenshot of the file that was produced to Plaintiff's counsel, which shows it is illegible:



On October 8, October 15, and October 24, 2025, Plaintiff's counsel attempted to email Defendant's counsel to indicate that the production was insufficient, attached herein as Exhibit A. Then, on November 1, 2025, Plaintiff received at his offices a package from the Defendant's counsel containing a printed-out version of that exact same spreadsheet (albeit rotated), consisting of approximately 150 pages of records in microscopic font. Enclosed therein was a letter, purportedly dated October 14, 2025, attached herein as Exhibit B, stating that "While it is disputed that the numbers are not legible (and can be made larger by zooming in); in an effort to resolve your concerns enclosed please find an updated version redacted in landscape format."

However, as the Plaintiff has explained numerous times, the Plaintiff's expert cannot reasonably analyze the classwide data to determine which numbers are on the Do Not Call Registry, as the Court ordered, in such a format or manner, most especially not in hard copy print out of over 150 pages of digital records that are printed with microscopic text. Plaintiff and his

expert require the redacted *original Excel file* so that Plaintiff and his expert can readily import and analyze the telephone data to run it against the National Do Not Call Registry. Indeed, FED. R. CIV. P. 34(b)(2)(E)(ii) and (i) require production of documents and ESI in "a form or forms in which it is ordinarily maintained or in a *reasonably usable form or forms*" and "as they are kept in the *usual course of business*." (emphasis added). Defendant's gamesmanship and tactics, including as outlined in the correspondence attached as Exhibit C, lend credence to the inference that Defendant is gatekeeping information that the Court has held is discoverable and must be produced, including at its September 24 conference. This unjustified conduct warrants sanctions. Moreover, the Court should extend the case deadlines in this matter given these issues.

## BACKGROUND AND MEET AND CONFER EFFORTS

Due to the *en masse* nature of telemarketing, the Plaintiff has filed this matter on behalf of the following putative class:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

In order to ascertain who contacted the Plaintiff, the manner and method by which those contacts were made, and the numbers on the Do Not Call Registry, Plaintiff propounded the following discovery request, which the Court agreed should be produced and the Defendant agreed to produce:

> **REQUEST FOR PRODUCTION NO. 20**: Please produce all documents containing any of the following information for each outbound telemarketing call or text sent by you or your vendors, including to the Plaintiff:
> - the date and time;
> - the caller ID;
> - any stop request received;
> - the result;
> - identifying information for the recipient; and

3

      • any other information stored by the call detail records

**OBJECTION**: Request No. 20 is overly broad and unduly burdensome and seeks information from their parties over which EMPWR lacks control. EMPWR further objects to the extent it is not a telemarketing firm.

**RESPONSE**: Without waiving the aforestated objection, see Exhibit A attached.

**AMENDED SUPPLEMENTAL RESPONSE:** Without waiving the aforesaid objections, see attached Redacted Lead List as directed by the Court.

Defendant was required to produce such ESI in its original, reasonably usable format. Defendant did not. This Court should therefore compel production of the original, redacted excel spreadsheet and extend the case deadlines, including discovery deadlines, in this matter until such discovery is made, as this information is essential to determining the scope of the case and the identity of responsible parties. And, as another Court has, this Court should sanction the Defendant for its gamesmanship and responses, which are substantially unjustified.

## **STANDARD**

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Federal Rules of Civil Procedure broadened the scope of discovery to include "any nonprivileged matter that is relevant to any party's claim or defense. . . . Information within this scope need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable. *Kopacz v. Delaware River & Bay Auth.*, 225 F.R.D. 494, 497 (D.N.J. 2004).

Under Federal Rule of Civil Procedure 34(a), a party may be required to produce documents, including electronically stored information (ESI), that are within its "possession, custody, or control." *See* Fed. R. Civ. P. 34(a)(1)(A). ESI must be produced "as they are kept in the usual course of business" and must be made accessible to the counterparty in "a form or

4

forms in which it is ordinarily maintained or in a reasonably usable form or forms." FED. R. CIV. P. 34(b)(2)(E)(ii), (i).

## ARGUMENT

1. **Plaintiff is entitled to the lead list in a "reasonably usable form." PDF images of an Excel spreadsheet and hard copies of ESI are not "reasonably usable forms."**

It is patently unreasonable for Plaintiff or his expert to need to read through fuzzy, microscopic text or manually type out telephone numbers from 150+ pages of hard copy materials, when that data is already available in digital format in the form of an Excel spreadsheet, but where Defendant will only produce a PDF printout with the contents as images of blurry text. Defendant's refusal to confer illustrates the impropriety of its conduct. Despite sending three emails to Defendant, the Plaintiff received no response by email but instead received a package on November 1, 2025 with an enclosed letter dated November 14, 2025, almost two weeks after it was purportedly sent. Indeed, Defendant likely did so because it knew that the deadline to complete discovery in this matter was closing on November 24, 2025, and under which the Plaintiff would have no reasonable opportunity to conduct follow up discovery, including requesting admissions and additional discovery based on Plaintiff's expert's analysis. And, despite the letter's exhortation to "zoom[] in" on the emailed PDF sent on October 8, that is not possible, as the Plaintiff explained and included in a screenshot via email on November 2, showing that the (redacted here) phone numbers are fuzzy and indistinguishable:



5

Federal courts consistently hold that PDF images of Excel spreadsheets and hard copies of ESI, as here, do not satisfy Federal Rule of Civil Procedure 34(b)(2)(E)(ii)'s requirement that ESI be produced in a "reasonably usable form." The Advisory Committee Notes to the 2006 Amendments provide crucial guidance in this respect, stating that:

> [T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. *If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature*. (emphasis added).

But that's *precisely* what the Defendant did here, taking an Excel spreadsheet and converting it into a PDF image which at the same time removed the ability to search the telephone numbers and process them, including to ascertain their presence on the Do Not Call Registry.

When, as here, ESI is ordinarily maintained in a format with searchable functionality, computational capabilities, or essential metadata (i.e. Excel), converting it to PDF images or hard copies that strip these features violates the "reasonably usable form" standard. Other federal courts have held that the *precise conduct of defendant here* did not constitute production in a "reasonably usable form." *Haywood v. Wexford Health Sources, Inc.*, No. 16 CV 3566, 2021 WL 2254968, at *2 (N.D. Ill. June 3, 2021) (holding that the "reasonably usable form" of 15,000 pages of documents in a PDF format was instead a single Excel spreadsheet and compelling production of said spreadsheet in native format). Indeed, in another consumer protection case, the court similarly compelled production of a spreadsheet that was converted to PDF because it was not as useful as the original Excel spreadsheet on various accounts. *Green v. Monarch Recovery Mgmt., Inc.*, No. 1:13-CV-00418-SEB, 2014 WL 1631825, at *3 (S.D. Ind. Apr. 24, 2014). Further citations abound. *John B. v. Goetz*, 879 F. Supp. 2d 787, 831 (M.D. Tenn. 2010)

6

("a paper production that is converted from ESI to hard copy undergoes a process that strips "metadata" from the electronic version of the documents"); *In re Profundity LLC*, 663 B.R. 383, 384–85 (Bankr. S.D. Fla. 2024) ("A file that is converted to another format solely for production, or for which the application metadata has been scrubbed or altered, is not produced as kept in the ordinary course of business."); *S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884 JB/WDS, 2012 WL 3656454, at *28 (D.N.M. Aug. 9, 2012) (holding parties have an obligation to preserve metadata when converting to PDF); *ADT LLC v. Vivint, Inc.,* No. 17-CV-80432, 2017 WL 11632812, at *2 (S.D. Fla. Dec. 1, 2017) (holding production of emails as PDFs was impermissible). Moreover, there is no reason why simply producing the Excel file (including by redacting through removal of columns) would be more burdensome than converting the PDF and redacting that way, as Defendant has done. *ADT LLC*, 2017 WL 11632812, at *2. To the contrary, Defendant's machinations here, including snail-mailing documents, have likely proved more burdensome on Defendant than simply producing the redacted Excel file itself.

EMPWR will likely argue in response that at least part of the PDF or hard copy documents can be searched through a process known as optical character recognition, or OCR, which allows a computer to take a photographed text image and search it for text. But even this possibility, which is rendered all the more impossible by the blurriness and size of the text which renders it "garbage in, garbage out," still does not preserve other unique features of Excel that have obvious relevance for use in the litigation, including metadata, document creation information, organization, and sortation. *Haywood*, 2021 WL 2254968, at *8. Put differently, EMPWR's production of ESI is not reasonably usable because "[t]he format of the information produce[d] . . . is different than the manner in which it is ordinarily maintained . . . The format in which [defendant] has produced the [information] makes it more difficult and burdensome for

7

[plaintiff] to use the information." *Rambus, Inc. v. Hynix Semiconductor Inc.*, Case No. C 05-334 RMW, 2007 WL 9653194, at *5 (N.D. Cal. Sept. 25, 2007). Simply put, the Plaintiff requires the *Excel file* of the telephone numbers to permit his expert to conduct a search for what numbers are or are not on the Do Not Call Registry, and the associated dates that the file was created, as Do Not Call Registry information changes over time. For the foregoing reasons, this Court should compel production of the Redacted Lead List in its original Excel format.

2. **This Court should sanction Defendant under Rule 37(a)(5).**

This Court should order Defendant to pay the reasonable expenses, including Plaintiff's attorney's fees, in making this instant motion. A finding of bad faith is not a prerequisite for the award of reasonable expenses under Rule 37(a)(5)(A). *Pugliese v. Cnty. of Lancaster*, No. 12-CV-07073, 2014 WL 5470469, at *2 (E.D. Pa. Oct. 29, 2014). As Judge Easterbrook put it, the rule is that "the loser pays." *Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994) (quoting 8 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2288 (3d ed. 1998)); *see also Hansen v. Shearson/American Express, Inc.*, 97 F.R.D. 465, 466 (E.D. Pa. 1983) (echoing the "loser pays" principle in this jurisdiction). An award of attorney's fees is presumptively mandatory under the rule. *LightStyles, Ltd. ex rel. Haller v. Marvin Lumber & Cedar Co.*, No. 1:13-CV-1510, 2015 WL 4078826, at *1 (M.D. Pa. July 6, 2015).

This Court can, and should, draw the impression that the Defendant is engaging in gamesmanship and coy tactics in an effort to prevent the Plaintiff and his expert access to discoverable information in the form of telephone numbers that he needs to analyze in order to determine which numbers are on the Do Not Call Registry in order to attempt to seek class certification. These tactics, combined with Defendant's failure to respond to at least three prior meet and confer communications as well as an email alleging the employment of those very

8

same tactics, can easily allow the Court to conclude that Defendant is engaging in gamesmanship aimed at preventing the Plaintiff and his expert access to the data necessary for class certification. Defendant failed to adduce any reason for why Plaintiff's impressions were incorrect, and did not promptly provide a supplement that would allow Plaintiff and his expert to analyze the requisite data, including *in a reasonably accessible electronic format* as is stored in the normal course of EMPWR's business, that is, Excel spreadsheets that can easily be copy-pasted and analyzed.

Indeed, the Court in *Haywood* sanctioned the Defendant for precisely the same conduct here, as have other Courts. *Haywood*, 2021 WL 2254968, at *8 ("By producing the spreadsheets in PDF form, Wexford deprived plaintiff of the ability to use the Excel spreadsheets efficiently while increasing the burden on plaintiff to sort more than 270,000 pages of information, most of which is either redacted or difficult or impossible to read."). In so doing, the Court noted that what the defendant did in that case, and what the Defendant does here, was not "substantially justified" because the Advisory Committee Notes make clear that the very conduct of converting searchable ESI into a non-searchable form is *explicitly impermissible*, as well as because the notes require the responding party to specify in advance of production the form in which the information will be produced. *Id.* at *9. Defendant here has not done so. As the *Haywood* court noted, and of relevance here to the tactic of subsequently snail mailing 150 pages of ESI to Plaintiff, "Had Wexford notified plaintiff of its intent to produce the spreadsheets in PDF form, it is reasonable to infer–based on counsel's experience in other litigation with Wexford as well as plaintiff's communications with Wexford shortly after the initial PDF production–that plaintiff would have objected and asked for the ESI in native Excel format." *Id.* Other Courts have similarly sanctioned Defendants for exactly this conduct without a finding of bad faith. *Factory*

*Direct Tires, Inc. v. Cooper Tire & Rubber Co.*, No. 3:11cv255/RV/EMT, 2013 WL 12096531, at *5-6 (N.D. Fla. Apr. 16, 2013) (imposing sanctions under Rule 37(a)(5) on party that "elected to produce the information . . . in a PDF format even though it possessed the information in an Excel format" because the conversion "degraded their [i.e., the documents'] searchability").

The aforementioned authorities show that this conduct is completely and wholly unjustified as an initial matter. When coupled with the Defendant's refusal to meet and confer on the issue or response to Plaintiff's counsel, including to the allegations outlined in Exhibit 3, this demonstrates a tacit admission that Defendant's position is unwarranted and sanctionable. In any event, none of this conduct is "substantially justified," justifying sanctions under Rule 37(a)(5).

### 3. This Court should extend the close of discovery and other deadlines.

As the Defendant still has not provided sufficient information to ascertain the scope and size of the class, the Plaintiff is yet unable to propound additional discovery (including depositions as to the data), evaluate the propriety of additional parties (including making allegations against them), or move for class certification. As such, this Court should extend the deadlines in this case to an additional 90 days either after the Defendant produces documents responsive to the instant RFP, or alternately 45 days after the Court denies the Motion. Plaintiff respectfully submits that the good cause standard of Rule 16(b)(4) has been satisfied here. The Plaintiff has been diligent in timely moving to compel responses to the discovery sought, and the Plaintiff still needs additional information which the Defendant has refused to provide, necessitating the motion, particularly in light of the production thus far, which raises more questions than answers. Furthermore, such information pertinent to the certification analysis will be required by the Court to conduct the "rigorous analysis" it is called to at class certification, which will not currently be possible without the provision of any discovery or analysis. *Wal-*

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Moreover, such a deadline is still consistent with Rule 23's counsel that the certification analysis be conducted "[a]t an early *practicable* time" FED R. CIV. P. 23(c)(1)(A) (emphasis added). It is self-evident that requiring the Plaintiff to complete discovery and seek class certification at this juncture under the applicable deadlines, without the benefit of discovery from Defendant, would be impracticable. *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) ("When the District Courts decided the class certification issue, there had been no motion for class certification and no discovery; whether the class could potentially fit within Rule 23 was determined on a motion to dismiss. This ruling was premature. To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis." In doing so, a court may delve beyond the pleadings to determine whether the requirements for class certification are satisfied.") (cleaned up).

## CONCLUSION

For the reasons stated herein, the Plaintiff's motion to compel should be granted, case deadlines extended, and sanctions, in the form of attorneys' fees and costs, awarded.

RESPECTFULLY SUBMITTED AND DATED this November 10, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel for EMPWR, regarding the subject of this motion, which is opposed. The parties exchanged numerous meet and confer emails regarding the request, and Defendant refused to respond, and therefore the parties, after reasonable effort, are unable to resolve the dispute.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties who have appeared by operation of the court's electronic filing system.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.