**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES E. SHELTON**, individually and on behalf of all others similarly situated, | : | Case No. 2:24-cv-6870 |
| | : | |
| Plaintiff, | : | **CLASS ACTION** |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| **EMPWR SOLAR LLC** | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I.    INTRODUCTION

EMPWR Solar LLC moves for summary judgment on the apparent theory that it cannot be responsible for the calls and texts made to Plaintiff James E. Shelton because the individuals who physically placed those contacts were employed by EMPWR through an offshore staffing firm called Treantly and because EMPWR used a dialing platform operated by a "consultant" called Primitive Power. That argument fails before the first element of the Rule 56 analysis is reached. EMPWR has not supplied this Court with *any* legal authority necessary to support its contention that these facts translate into "no agency as a matter of law."

Under Rule 56, EMPWR bears the initial burden of demonstrating the absence of a genuine dispute of material fact on a legal element it contends Plaintiff cannot prove. A party seeking summary judgment also bears the burden of showing that it is entitled to judgment as a matter of law on a particular issue, through reference to appropriate authority. Yet on agency, consent, and damages, EMPWR's brief offers little more than assertions, a *single* citation, and a misreading of the TCPA's damages provision. That is not enough.

Three threshold deficiencies doom EMPWR's motion before the Court reaches the merits. First, EMPWR cites no controlling authority for the standard governing agency in the TCPA context. Its sole merits citation on agency, *Newell*, was decided in the plaintiff's *favor* on a motion to dismiss. It does not establish that a seller negates agency as a matter of law on a summary judgment record, particularly under the facts here. Hiring an offshore contractor to conduct one's calling through a system provided by a "consultant" is sufficient under TCPA direct liability principles, let alone any one of the three generally recognized theories of vicarious liability: actual authority, apparent authority, and ratification. But EMPWR's motion does none of that; all it does is just engage in handwaving about how there's no liability because EMPWR is supposedly "not a telemarketing firm," a legal requirement not found in the statutory text.

Relatedly, EMPWR ignores the TCPA's governing framework. The TCPA's Do Not Call regulations do not ask whether a human caller was an "employee" of the defendant. They ask whether the call was initiated "by or on behalf of" the defendant. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The FCC's Dish Network Order confirms that a seller may not insulate itself from liability by outsourcing its telemarketing activities to unsupervised third parties and further confirms that companies engaging in calling conduct similar to that here are *directly*, or at least vicariously, liable under the TCPA. In the same vein, EMPWR asks this Court to resolve agency as a matter of law even though agency is ordinarily a question of fact that may not be resolved on summary judgment unless the relationship is so clear as to be undisputed.

When viewed in the light most favorable to Plaintiff, the relevant facts are as follows: EMPWR contracted with Treantly to supply human beings, as opposed to its own employees, who would perform EMPWR's initial outreach using EMPWR's calling system provided by its own "consultant," Primitive Power. These outsourced agents, like Mecah Pojas, then reached out

2

to Plaintiff using Primitive Power's dialing infrastructure and identified themselves as calling "from Empwr Solar" while pitching EMPWR's solar services. A reasonable jury could conclude that this was EMPWR's own telemarketing conduct, carried out through human and technological instrumentalities that EMPWR controlled.

For the reasons set forth below, EMPWR's motion should be denied in its entirety.

## II.    FACTS[1]

Plaintiff James E. Shelton's residential telephone number, (484) XXX-XXXX, has been registered on the National Do Not Call Registry since 2015. The number is assigned to a residential telephone exchange service and is not used for business purposes.

On or about March 11, 2024, EMPWR, through its representative Brittany Ducos, entered into a Client Outsourcing Master Agreement with Treantly Recruitment Ltd. (ECF No. 31-6.) The Agreement is a staffing contract under which EMPWR obtained outsourced human beings to perform services for EMPWR, subject to EMPWR's control. Specifically, the Agreement provides that its "purpose . . . [is to] provide business process outsourcing services to [EMPWR] through the engagement of Subcontractors." Under the Agreement, Treantly agreed to "source, vet, and supply Subcontractors from its network in the Philippines to perform" duties in a "Job Description" that was never produced in discovery. (ECF No. 31-6.)

EMPWR's agreement with Treantly, an outsourcing agency, made it clear that EMPWR was obtaining outsourced agents to do work directed of them. Specifically, EMPWR was required to provide "initial training and integration support to the [Treantly] Subcontractor, ensuring familiarity with [EMPWR's] systems, processes, and culture," agreed to "participate in

---

[1] Plaintiff notes that Defendant's Motion for Summary Judgment fails to include the separate Statement of Undisputed Material Facts required by this Judge Younge's *Policies and Procedures*, D.1 (p. 13). The Procedures also state the appropriate remedy, "Summary judgment motion practice that fails to follow these procedures to the Letter *will be* stricken."

[performance] reviews and provide constructive feedback" to the outsourced agents, and bore ultimate responsibility under both its internal security protocols and the "extent of services and associated costs." Critically, the Agreement's "independent contractor" clause states only that the Agreement does not create an *employment* relationship. It says nothing about whether the subcontractors act on EMPWR's behalf. The Agreement, through its other provisions, answers that question in the affirmative as outlined above. (ECF No. 31-6.)

Pursuant to its Agreement with Treantly, EMPWR outsourced telemarketing services it desired to conduct to one of the two subcontracted agents it hired through Treantly in the Philippines. One of those agents was an individual named Mecah Pojas. (Rog. 2, ECF No. 31-5.) The Plaintiff was contacted "by Mecah Pojas" using leads that were obtained from "Launch Marketing/Millennial Planning Solutions." (*Id.*) Treantly was "responsible for payroll, benefits and taxes" for these individuals through the aforementioned outsourcing arrangement. (*Id.*) The subject telephone number, 215-372-8677, was "owned and/or maintained by Primitive Power" LLC. (Rog. 2 ECF No. 31-5.) Primitive Power was EMPWR's "1099 consultant." (*Id.*) Through Primitive Power, EMPWR's agents hired through Treantly, including Mecah Pojas, had access to the PODEO platform, which is a telemarketing platform that held the subject telephone number. (Rog. 9, ECF No. 31-5.)

On November 29, 2024, Mecah Pojas, one of the two Filipino representatives that EMPWR hired through Treantly pursuant to the Agreement, placed a telephone call and a text message call[2] to the aforementioned telephone number. The calls came from 215-372-8677,

---

[2] This Court, and others in the Third Circuit, have adopted the position that a text message "call" is a "call" under Section 227(c) of the TCPA. *Newell v. RxLink Inc.*, No. 2:25-cv-4270-MRP, ECF No. 43 (E.D. Pa. Mar. 12, 2026); *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *4 n.4 (E.D. Pa. Mar. 14, 2025) ("Under the TCPA, text messages are

which is associated with Primitive Power's PODEO account from which Mecah Pojas made the calls. (Rog. 2, 5, ECF No. 31-5.) The text message call read:

> Hi Jamie, this is Mecah from Empwr Solar. I touched base to see if you're still having a thought of taking advantage the benefits of having solar panels, that could potentially save your money on your energy bills. Let me know I would love to connect! Have a great day.

(ECF No. 31-4.) This message reflects EMPWR's own assigned, outsourced customer contact worker contacting a consumer about EMPWR's solar services while presenting himself as "from Empwr Solar." To the consumer, the message did not appear to come from "Treantly" or "Primitive Power." It came from "Empwr Solar."

### III.    STANDARD

The standard for a motion for summary judgment is well established before this court. Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the nonmovant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). All inferences are drawn in the nonmovant's favor. Id. at 255. In addition to demonstrating the absence of any genuine issue of material fact, the party seeking summary judgment also bears the burden of establishing that those undisputed facts entitle it to judgment as a matter of law. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 135 (3d Cir. 2016).

---

considered 'calls.'") (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016)); *Perrong v. Chase Data Corp.*, No. CV 22-2628, 2024 WL 329933, at *2 (E.D. Pa. Jan. 26, 2024) (same).

Summary judgment is inappropriate when the moving party cannot produce legal authority substantiating its position that it is entitled to judgment as a matter of law. "On a motion for summary judgment, it is inappropriate for this court to *sua sponte* set forth the substantive elements of the governing law where the moving party has failed to do so and then apply whatever factual arguments the moving party has advanced to find that a plaintiff may not prevail at trial." *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 1005, 1009 (D.V.I. 1995). With respect to vicarious liability and its interplay with the summary judgment standard, the issue of whether a principal-agent relationship exists is usually a question of fact for the jury, unless the facts giving rise to the relationship are not in dispute. *Constitution Bank v. DiMarco*, 836 F.Supp. 304, 307 (E.D. Pa. 1993), *aff'd.*, 27 F.3d 556 (3d Cir. 1994).

## IV.    ARGUMENT

A.  *EMPWR's motion fails because it never supplies the legal framework necessary to entitle it to judgment as a matter of law on any of the issues it presents and also fails to point to any material facts it claims are undisputed.*

Apart from citing to boilerplate authorities regarding the summary judgment standard, EMPWR cites to *no law* for its proposition that the "TCPA Claims Fail" as a matter of law sufficient to meet its burden at summary judgment. EMPWR simply "denies it is liable," which is plainly insufficient to EMPWR to meet its burden at summary judgment of demonstrating that it is entitled to judgment as a matter of law. Its *sole authority* for the *only* basis on which EMPWR appears to assert that it is entitled to summary judgment in its favor, that of whether EMPWR is directly or vicariously liable for the conduct at issue, is *Newell v. Strategic Admin Group*. As such, EMPWR is not entitled to judgment as a matter of law because it has failed to adduce any appropriate legal authority on which basis this Court can grant summary judgment. *Tutu Wells*, 909 F. Supp. at 1009.

*Tutu Wells* is instructive and directly on point. In that case, the defendant moved for

6

summary judgment on a piercing the corporate veil claim. However, the defendant failed to address what legal standard and choice of law rules to apply to the authority it cited. Without "lay[ing] out either the elements of the law with respect to piercing the corporate veil in each of these jurisdictions or evidence that the Plaintiffs will be unable to meet these elements," the court could not grant summary judgment because it was unable to determine if piercing the corporate veil was appropriate under the applicable law. *Id.* The court noted, "On a motion for summary judgment, it is inappropriate for this court to *sua sponte* set forth the substantive elements of the governing law where the moving party has failed to do so and then apply whatever factual arguments the moving party has advanced to find that a plaintiff may not prevail at trial." *Id.* The *Tutu Wells* Court further explained why determining the appropriate law to apply would amount to a decision impermissibly favoring the moving party contrary to the appropriate standard:

> The court is wary to make specific findings about the elements of what a plaintiff must prove in order to pierce the corporate veil under all of these jurisdictions. . . . Without argument by the parties on the appropriate elements to apply, the court would be favoring Exxon as the moving party in making such a determination without allowing the Plaintiffs here to present their argument. This concern is particularly acute where, as in the Virgin Islands, there is very little case law if any dealing directly with the elements necessary to pierce a corporate veil.

*Id.* at n.5.

Defendant here commits precisely the same error as did the defendant in *Tutu Wells*. The only authority it cites in support of its contention that it is entitled to judgment as a matter of law is *Newell*. Presumably, Defendant deploys *Newell* for its proposition that it categorically cannot be held liable for the actions of third parties other than itself in placing the calls at issue in this litigation. But not even *Newell* does the work Defendant needs it to do to prevail at summary judgment. In *Newell*, the plaintiff received a call marketing the defendant, Strategic Administration Group's, services. *Newell v. Strategic Admin. Grp., Inc.*, No. 2:20-CV-00967-JDW, 2020 WL 12770854, at *1 (E.D. Pa. May 6, 2020). However, SAG claimed that a "third-

party vendor, operating as an independent contractor, apparently made the call," and claimed that it could not be subject to personal jurisdiction in Pennsylvania "based on a call that its vendor made." *Id.* In *denying* the defendant's motion to dismiss on that basis, this Court outlined the applicable standard for determining whether or not a seller is liable in a TCPA case:

> The FCC's rules implementing the TCPA "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. Calls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

> While a seller "does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held variously liable under federal common law principles of agency for violations of" Section 227(b), which is what Newell alleges here. *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013); *see also Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 674 (2016) (Supreme Court has no reason to question FCC's determination regarding vicarious liability under the TCPA).

> SAG has established that it outsources its telemarketing and authorizes those third-parties to enter into contract on its behalf. Those facts, however, could give rise to a plausible claim of vicarious liability, regardless of the label attached to the relationship that SAG has with its third-party vendor. . . . That conclusion is consistent with the Third Circuit's mandate that courts construes the TCPA broadly to effect its purpose. *See Gager v. Dell Fin. Svcs., LLC*, 828 F.3d 265, 271 (3d Cir. 2013).

> Because the TCPA could impose vicarious liability on SAG for a call made to Pennsylvania, SAG has the requisite minimum contacts with Pennsylvania to give rise to personal jurisdiction.

Applying *Newell*, EMPWR's agency argument is structurally this: because no EMPWR employee contacted Plaintiff, and because Treantly and Primitive Power were independent contractors, not employee, there is no liability under the TCPA. It does not quote from *Newell*, and cites no authority for three propositions critical to its motion: (1) that an independent contractor cannot also be an agent, (2) that outsourced caller conduct can never amount to direct conduct, or (3) that no reasonable jury could hold that the outsourced caller conduct under the arrangement here renders EMPWR liable under the TCPA under a theory of either direct or

8

vicarious liability. Each proposition is legally wrong.

EMPWR also ignores the seller-focused framework that governs this case. EMPWR's brief does not meaningfully engage with *Dish*, which *Newell* cites, does not cite the seller/telemarketer regulatory definitions, and never explains why this record forecloses, as a matter of law, either direct seller conduct or any of the three agency theories.

Most importantly, EMPWR's motion fails to articulate any purportedly undisputed material facts in accordance with Judge Younge's *Policies and Procedures*. In no uncertain terms, those policies also articulate the consequences for failing to do so. "Summary judgment motion practice that fails to follow these procedures to the Letter will be stricken." EMPWR's summary judgment motion fails to "follow these procedures to the Letter."

EMPWR's motion must be stricken.

B.  *EMPWR's motion still fails, even if it does deploy appropriate legal authority, because a reasonable jury could hold EMPWR directly or at least vicariously liable under the facts developed here.*

The TCPA's Do-Not-Call provision prohibits "initiat[ing] any telephone solicitation" to a number on the national registry. 47 C.F.R. § 64.1200(c)(2). The TCPA provides a private right of action to any person who has received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [47 C.F.R. § 64.1200(c)(2)]." 47 U.S.C. § 227(c)(5). The applicable regulation also defines a "seller" as "the person or entity on whose behalf a telephone call or message is initiated." 47 C.F.R. § 64.1200(f)(10). As such, under the TCPA, EMPWR is plainly the "seller" because the telephone calls, on face, were initiated on EMPWR's behalf, specifically naming EMPWR.

This Court's decision in *Newell* accurately outlines the requirements for a finding of direct and/or vicarious liability under the TCPA, citing the FCC's *Dish Network* order. Although Plaintiff contends that it's inappropriate under *Tutu Wells* for this Court to proceed beyond

9

*Newell* at this stage, because that's the only authority to which Defendant cites for the proposition that it is entitled to summary judgment, given that *Newell* cites the FCC's *Dish Network* order, Plaintiff addresses that order to show that the facts at issue here would support a reasonable jury's finding of both direct and vicarious liability under the principles articulated in that order.

The Dish Network Order cited by *Newell* establishes that a "seller" may be liable in two instances under the TCPA. First, a seller may be *directly* liable under the TCPA when it "initiates" a call. *In re Dish Network*, 28 F.C.C. Rcd. at 6582. A caller "initiates" a call within the meaning of the TCPA when it "takes the steps necessary to physically place a telephone call." *Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594, at *6 (S.D. Ohio Mar. 20, 2014). From this definition, it is clear that one can "initiate" a call in a manner that does not involve physically picking up the telephone receiver: "To be sure, a seller can also be a telemarketer — *e.g.*,when the seller initiates a call on its own behalf. And one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it — by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *Id.* at 6583.

i.    <u>The evidence establishes direct liability.</u>

Thus, a "seller" can be *directly* liable in circumstances when it "initiates" a call "through another" when a call is "made on its behalf," "even if the entity did not directly place the call." *In re Dish Network*, 28 F.C.C. Rcd. at 6594 n.81; *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. CIV.A. 11-2658 JBS, 2014 WL 4755487, at *6 (D.N.J. Sept. 24, 2014). By hiring Mecah Pojas through Treantly as an outsourced representative to place calls using the

10

PODEO system through which EMPWR had access to as part of its relationship Primitive Power, EMPWR took the steps necessary to physically place the subject calls, which subjects EMPWR to direct liability under *Dish Network*, as outlined in *Newell.* Indeed, EMPWR readily admits that it directly obtained the lead lists from another third party and that those lists were then provided to Mr. Pojas to send the calls through the PODEO platform.

EMPWR did not buy advertising. It did not hire a third party to conduct advertising on its behalf. It hired human beings, albeit through independent contractors, not as employees. In this regard, EMPWR conflates an employee/independent contractor analysis with an agency analysis. Employment status and agency are distinct inquiries. The two are not coextensive with an agency analysis, as the independent contractor, principal-agent, and master-servant relationships are distinct; the status of an agent and independent contractor are not mutually exclusive. *Castle Cheese, Inc. v. MS Produce, Inc.*, No. CIV.A 04-878, 2008 WL 4372856, at *6, *7 (W.D. Pa. Sept. 19, 2008). An independent contractor can nevertheless be an agent of a principal, and an agent need not be an employee. *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 837 (S.D. Tex. 2008) ("Under a contract, a party may be both an agent and an independent contractor.").

The employee clause answers whether Treantly was EMPWR's employee (it was not). It does not answer whether Treantly-supplied personnel were authorized to act on EMPWR's behalf and subject to EMPWR's control. The rest of the Agreement answers that question. The Treantly Agreement's purpose clause is explicit. Its function is to "provide business process outsourcing services to the Client through the engagement of Subcontractors." Treantly agreed to "source, vet, and supply Subcontractors . . . to perform the Services specified in the Job Description," which such "Job Description" was "[a] detailed description of the roles, responsibilities, and tasks to be performed by the Subcontractor, as provided by [EMPWR] and

11

agreed upon by [Treantly]." The "Subcontractor" is defined as personnel engaged "to render Services to [Empwr]." Practically every sentence in the Agreement directs the subcontractors' work toward EMPWR. What EMPWR calls outsourcing is, in substance, EMPWR staffing its front-end sales force through 1099 subcontractors as opposed to employees.

Paired with those purpose provisions, EMPWR retained classic indices of principal control in a similar manner to those of its own employees, as detailed in the Statement of Facts. For example, it agreed to train and integrate Treantly's subcontractors into EMPWR's systems and culture, agreed to participate in performance reviews, retained the explicit approval to hire additional hours, and retained the exercise of client control, security responsibility, and at-will termination rights. Those are textbook manifestations of direct control. An arm's-length third party telemarketing vendor does not permit performance reviews of the vendor's staff.

ii.      The evidence establishes vicarious liability.

But even if this conduct is insufficient to subject EMPWR to direct liability on the basis that EMPWR did not sufficiently control Pojas or his calling conduct, the FCC's *Dish Network* Order also explains that "[a] seller . . . may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers" and that a seller may not insulate itself "by outsourcing its telemarketing activities to unsupervised third parties." *In re Dish Network*, 28 F.C.C. Rcd. at 6584, 6592. A seller that provides "a third-party telemarketer . . . authoriz[ation] . . . to market its goods or services" also has the ability to exercise oversight and control over those third parties sufficient for a finding of *vicarious*, as opposed to direct, liability. *Id.* at 6593.

As the FCC explained, "the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers[.]" *Id.* at 6588. Seller liability "give[s] the seller

appropriate incentives to ensure that their telemarketers comply with [the FCC's] rules." *Id.* And allowing a seller "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties," would leave consumers "in many cases without an effective remedy for telemarketing intrusions" particularly "if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case." *Id.* As the FCC put it:

> [W]e see no reason that a seller should not be liable under [the TCPA] for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised.

> *Id.* at 6593.

Vicarious liability under the TCPA encompasses a "broad range of agency principles," including actual authority, apparent authority, and ratification. *Id.* at 6584; *Newell*, 2020 WL 12770854, at *1. That is the framework EMPWR never addresses.

Each of these three theories offers "an independent basis" for vicarious liability. *Id.* at 6584. In this case, liability as against EMPWR is clear under actual authority, apparent authority, and ratification theories. Start with actual authority. A reasonable jury could find that EMPWR had an agency relationship with Pojas, Primitive Power, and Treantly, and provided them the actual authority to place the unlawful calls.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 396 (7th Cir. 2014) (quoting Restatement (Third) of Agency § 1.01). "[A]n independent contractor can be an agent. An agent need not be an employee." *1-800 Contacts, Inc., v. Lens.Com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013). Under Pennsylvania law, even independent contractors like Pojas are considered a specific type

13

of agent. Agents are characterized as either servants or independent contractors, depending on the amount of control the principal is capable of exercising over the agent. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994). Servants "generally are employees of the principal, and are subject to physical control by the principal." *Id.* at 1435. In contrast, an independent contractor "is not subject to that degree of physical control, but is only subject to the general control and direction by the principal." *Id.* "All agents who are not servants are independent contractors." *Id.*

Here, Mecah Pojas, one of exactly two Treantly employees assigned to EMPWR's account, called Plaintiff's DNC-registered number and said: "Hi Jamie, this is Mecah from Empwr Solar." That self-identification is perhaps the single most damaging fact for EMPWR in this record. EMPWR's own assigned, outsourced customer-contact worker contacted a consumer about EMPWR's solar services while expressly presenting himself as "from Empwr Solar." EMPWR cannot seriously argue that Mecah, who assigned to EMPWR's account and trained in EMPWR's systems that it obtained from Primitive Power, was not acting for EMPWR when he stated he was calling "from Empwr Solar." Upon a showing that an employer controlled an independent contractor's conduct, the plaintiff shows a *prima facie* case of agency that shifts the burden to the employer of demonstrating nonagency at the time of the occurrence. *In re Paolino*, 89 B.R. 453, 461 (Bankr. E.D. Pa. 1988) ("[O]nce an agency relationship is established, the burden is on the principal to show that the agent acted beyond the scope of his or her authority."). EMPWR has not done so.

Nor does the fact that the phone number (215) 372-8677 was owned and/or maintained by Primitive Power matter on this record. Primitive Power was EMPWR's "1099 consultant." The Treantly employees, whom EMPWR hired and had a contract with Treantly over, "received

direction from Treantly and Primitive Power," EMPWR's own consultant. EMPWR further confirms that Primitive Power "would have information regarding the PODEO platform," the system used for the contacts, while EMPWR itself "does not have an account with PODEO." All this shows is that EMPWR thus split its telemarketing functions: Treantly supplied the human labor, and Primitive Power supplied the dialing infrastructure and platform and agreed to "consult" with EMPWR, presumably regarding marketing strategies and training.

Critically, both components were EMPWR's *chosen instrumentalities*. That functional division does not sever liability, it only seeks to layer certain functions. "A person or entity that is appointed by an agent to perform functions assigned to the agent by the principal is known as a 'subagent.'" *Griffin v. Safeguard Props. Mgmt., LLC*, No. 18 C 5755, 2020 WL 6118572, at *3 (N.D. Ill. Oct. 16, 2020). Agents authorized to do so may "appoint subagents to perform those tasks or functions the agent has undertaken to perform for the principal." *Id.* Consequently, "an action taken by a subagent carries the legal consequences for the principal that would follow were the action instead taken by the appointing agent." *Id.*

Like the question of agency, the question of a subagency relationship is improper for summary judgment unless the relationship is so clear as to be undisputed. *Id. Kemether v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*, 15 F. Supp. 2d 740, 752 (E.D. Pa. 1998). "Control is a concept that embraces a wide spectrum of meanings, but within any relationship of agency the principal initially states what the agent shall and shall not do, in specific or general terms. Additionally, a principal has the right to give interim instructions or directions to the agent once their relationship is established." Restatement (Third) of Agency, § 1.01 (Comment f(1)). "The principal's right of control presupposes that the principal retains the capacity throughout

the relationship to assess the agent's performance, provide instructions to the agent, and terminate the agency relationship by revoking the agent's authority." *Id.*

The Court's reasoning in *Katz v. Allied First Bank, SB*, another TCPA case, is particularly instructive. There, as here, a seller, a bank, engaged an intermediary to engage in calling conduct, and that intermediary went off and hired a third-party subcontractor to conduct the calling conduct. No. 22 C 5277, 2026 WL 636723, at *8 (N.D. Ill. Mar. 6, 2026). Despite not even disclosing the presence of the third-party subcontractor to the bank, the court denied summary judgment because it held that genuine disputes over whether the subagent's conduct was authorized precluded summary judgment. Indeed, this case is more akin to two other cases in which the respective courts held that subagency existed between vendors and the call center when it was undisputed that the seller knew that the call center would be the entity actually placing the calls. *Moore v. Club Exploria, LLC*, No. 1:19-CV-02504, 2025 WL 2755076, at *12 (N.D. Ill. Sept. 26, 2025); *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 879 (N.D. Ill. 2024). Here, EMPWR's own admissions show that it knows *precisely* what it hired Pojas, Treantly, and Primitive Power to do, place calls selling its solar services, and there exists no evidence suggesting that any one of these entities were somehow prohibited from doing so or acting outside the scope of what EMPWR explicitly authorized and knew about.

Next, there exists a basis to hold EMPWR liable on the basis of apparent authority. Apparent authority turns on whether the principal's words or actions caused a third party to reasonably believe that the agent was authorized to act on the principal's behalf. This theory requires little analysis here. Mecah Pojas told Plaintiff he was calling "from Empwr Solar." Plaintiff later received an email advertising EMPWR's products. EMPWR's entire sales structure was designed by EMPWR so that the first point of consumer contact would be a worker assigned

16

to EMPWR's account, pitching EMPWR's solar services, presenting himself as EMPWR. A consumer receiving that text would plainly and reasonably believe the caller was acting for EMPWR. Nor can EMPWR escape this by pointing to Treantly's payroll. The relevant question is what EMPWR's own conduct, specifically, deploying an assigned worker to identify himself as calling "from Empwr Solar," led Plaintiff reasonably to believe. *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at \*2 (E.D. Pa. Apr. 4, 2022); *Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 646 (D.N.J. 2025) ("After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is."). The answer is unambiguous and supports a finding of apparent authority here.

Finally, even if this Court were to disregard the clear manifestations of agency under an actual authority and apparent authority theory here, it is likewise clear that EMPWR is liable for the calling conduct under a ratification theory.  "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Restatement (Third) of Agency § 4.01. Thus, "[a] principal can ratify his agent's actions *either* by not repudiating them *or* by accepting their benefit." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677 (7th Cir. 2004) (emphasis added); Restatement (Third) of Agency § 4.01, comment f ("A principal may ratify an act by failing to object to it or to repudiate it.") "A person is not bound by a ratification made without knowledge of material facts involved in the original act *when the person was unaware of such lack of knowledge*." Restatement (Third) of Agency § 4.06 (emphasis added).

Thus, ratification requires either "knowledge of material facts" or "willful ignorance," i.e, where the principal is "aware that it does not know the material facts and ratif[ies] anyway."

17

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. March 22, 2019) (reversing summary judgment for defendant on ratification in a TCPA case). Ratification through willful ignorance occurs "when the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Id.* at 1075 (citing Restatement (Third) of Agency § 4.06 cmt. d.).

Here, the facts show both that EMPWR had knowledge of the material facts, or alternatively, that it maintained willful ignorance of them. Critically, EMPWR admits that it obtained lead lists of individuals to call from "Launch Marketing/Millennial Planning Solutions," and then provided them to Mecah Pojas to call. It could have scrubbed them against the Do Not Call Registry, but it did not; in fact, it admits that it does not maintain an FTC SAN, or Subscription Account Number, the account number used to access the National Do Not Call Registry. 16 C.F.R. § 310.5(a)(11)(iii) (requiring "sellers" like EMPWR to maintain records of "[t]he subscription account number that was used to access the registry").

EMPWR admits it contracted with the employees Treantly provided for marketing purposes. EMPWR admits Primitive Power was its "consultant." EMPWR admits its Treantly personnel that it contracted with Treantly to provide received direction from Primitive Power. EMPWR admits that it provided those personnel lead lists to call from another source. When Plaintiff asked for more information and then asked to be placed on the do-not-call list, EMPWR's own structure acted on each request, demonstrating it received and acted upon the benefit of the initial contacts. EMPWR's entire revenue model for solar services depends on exactly these kinds of initial customer contacts. EMPWR accepted the fruits of the calling campaign, including by emailing Plaintiff afterward, and got precisely what it bargained for.

18

To the extent EMPWR claims that the evidence somehow shows that EMPWR did not know what Pojas, Treantly, and Primitive Power were doing, the *Dish* order, and basic ratification principles, foreclose this posture. A seller cannot avoid responsibility by "outsourcing its telemarketing activities to unsupervised third parties." 28 F.C.C. Rcd. at 6588. Any claimed ignorance of the operational details of its own vendor chain, if genuine, is not a defense. A seller cannot choose not to know and then ask for summary judgment because it does not know.

C.   *EMPWR's other arguments fail.*

EMPWR seems to make two other arguments at summary judgment, but devotes little explanation to them. First, EMPWR seems to claim that the Plaintiff must plead actual damages. Second, EMPWR seems to claim that it had consent. Neither is availing.

Start with consent. Consent is an affirmative defense under the TCPA on which EMPWR bears the burden of proof. *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 340 F. Supp. 3d 445, 452 (E.D. Pa. 2018), aff'd, 954 F.3d 615 (3d Cir. 2020); *Hartley-Culp v. Credit Mgmt. Co.*, No. 3:CV-14-0282, 2014 WL 4630852, at *3 (M.D. Pa. Sept. 15, 2014). For a defendant to prevail on a summary judgment motion based on an affirmative defense, the defendant must adduce evidence supporting each element of its affirmative defense, and the evidence must be such to "support the findings of fact necessary to win" on such defense. *El v. SEPTA*, 479 F.3d 232, 237 (3d Cir. 2007). Put another way, "it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238 (explaining that evidence presented at summary judgment on affirmative defense must be such that no reasonable juror would disbelieve it).

19

EMPWR's consent defense falls far short of that standard.

First, all of EMPWR's discovery responses on consent are all hedged with "upon information and belief" and statements like "it is believed" that "any contact included 'opt in' consent of the homeowner *and/or* the information was scrubbed." EMPWR cannot even get its own story straight. That is not competent evidence at summary judgment on an issue for which it bears the burden of proof. One cannot discharge their burden of proving something by "believing" in two fundamentally incompatible alternatives. Moreover, the "evidence" of consent, purported statements made by "Launch Services/Millennial Planning Solutions," or its principals is not even admissible because it is third-party hearsay. *Hossfeld*, 726 F. Supp. 3d at 872. Third-party hearsay is not sufficient to carry a summary judgment burden on an affirmative defense. *Id.* Nor can consent be retroactively obtained under the TCPA. *Bradley v. DentalPlans.com*, 2024 WL 2865075, at *15 (D. Md. June 6, 2024); *Harrison v. Humana, Inc.*, No. 3:24-CV-00262-GNS, 2024 WL 4828737, at *5 (W.D. Ky. Nov. 19, 2024). EMPWR has not established consent as a matter of law.

EMPWR's first argument is most easily dispatched by the plain text of the statute. Section 227(c)(5)(B) of the TCPA authorizes a plaintiff to recover "actual monetary loss from such a violation," *or* to receive "$500 in damages for each such violation, *whichever is greater*." 47 U.S.C. § 227(c)(5)(B) (emphasis added). The phrase "whichever is greater" establishes two independent remedial tracks. The plaintiff may recover the greater of the actual loss *or* $500 per violation. The Plaintiff here has elected the latter. Moreover, the TCPA provides that "[i]f the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

20

As such, the Plaintiff is entitled to up to $1,500 in damages if a jury determines at trial that EMPWR "willfully or knowingly violated the regulations prescribed under this subsection." EMPWR's criticism that Plaintiff's discovery response used the pronoun "herself" rather than "himself" is, at most, a response drafting error. EMPWR cites no legal authority for the proposition that a TCPA plaintiff must establish a monetary loss. There is no such requirement. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("A plaintiff alleging a violation under the TCPA need not allege any *additional* harm beyond the one Congress has identified.").

## CONCLUSION

EMPWR's motion for summary judgment should be denied. EMPWR has not supplied the legal framework necessary to adjudicate its motion. It has not supplied the facts required by Judge Younge's *Policies and Procedures*. Finally, its arguments on agency, consent, and damages simply fail as a matter of law.

RESPECTFULLY SUBMITTED AND DATED this March 25, 2026.

/s/ *Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
E.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

March 25, 2026

<div style="margin-left: 40%;">

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
E.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

</div>

22